[Civ. No. 6168. First Appellate District, Division One.—April 14, 1928.]

WILLIAM J. BOWMAN, Appellant, v. EVELYN CAR-ROLL, Respondent.

Porter & Sutton and Frank E. Carleton for Appellant.

Guy Eddie for Respondent.

KNIGHT, J.—Plaintiff appeals from a judgment rendered in an action to compel an accounting under a partnership agreement entered into between the plaintiff and defendant for the purchase and sale of real estate; also to impress a trust upon a parcel of land acquired pursuant to said agreement and standing in defendant's name. Insufficiency of the evidence to sustain the findings and the judgment constitutes the main ground of appeal.

The complaint alleged that under the terms of said agreement plaintiff was to select the property to be purchased and that title thereto was to be taken in defendant's name; that each party was to furnish one-half of the cost of the acquisition of the property, and when sold or otherwise disposed of the proceeds derived therefrom should be equally divided. The court found that said agreement had been made as alleged, and that pursuant thereto plaintiff selected and there was purchased at various times five parcels of land situate in Los Angeles, four of which were afterward sold at a profit, and a bungalow court was erected on the fifth parcel, with reference to which the court found as follows: that the parties "agreed that they would erect a bungalow court upon said property, plaintiff at said time offering and suggesting that he secure a loan on certain individual personal property belonging to him in order to defray his half of the cost of said venture; the defendant, however, stating to the plaintiff that it was not necessary for him to do so, and that she would advance the money necessary from funds she then had on hand; and it was then and there so agreed by the parties; that pursuant to said arrangement and understanding, there was constructed upon

said lot a seven-unit bungalow court, the defendant advancing to the plaintiff during the construction of said court the sum of approximately eight thousand ($8,000) dollars, for the payment of the cost thereof, and which said moneys were used in the construction of said building.'' The court further found that defendant afterward received the sum of $3,831.82 as rentals from said bungalow court, but refused to account to plaintiff for any part thereof or for any of the profits derived from the sale of the other properties. The vital finding upon which the decision in the case turned, however, was that ''plaintiff did not furnish one-half of the cost of the acquisition of the properties'' above mentioned, except his half of the purchase price of the first parcel purchased, which the court found was subsequently sold for $3,388.64 net; and therefore the court concluded that plaintiff was not entitled to an accounting as to any of the properties acquired pursuant to said agreement, but should be given judgment for the sum of $1,694.34, representing one-half of the sale price of the parcel last mentioned. Judgment was entered accordingly.

█ The evidence shows that all of the property acquired was purchased at various times in the order following: First, a lot on the corner of Seventy-seventh and Main Streets; second, a lot on the corner of Ninety-first Street and Moneta Avenue; third, a corner lot at Seventy-eighth and San Pedro Streets; fourth, a corner lot at Seventy-fifth and San Pedro Streets; and lastly, lot number 33 of tract number 1889, upon which the bungalow court was erected; that the entire purchase price of the first piece purchased, on the corner of Seventy-seventh and Main Streets, was advanced by plaintiff and afterward defendant reimbursed him for her half thereof; and that the last piece of property acquired, the bungalow court property, was purchased prior to the sale of the lot on Seventy-seventh and Main Streets, for a consideration of approximately $3,000, of which sum $1,969.93 had been paid by defendant at the time the bungalow court was completed. But, according to defendant's own testimony, $1,000 of the purchase price paid for the latter property was obtained by her through the medium of a loan made on the security of the lot at Seventy-seventh and Main Streets in which plaintiff admittedly owned a one-half interest. Her testimony in this respect was as follows: ''Mr. Eddie [attorney for

defendant] : Q. What did you do to raise that money? A. Had to go to the bank and raise money. Sold Liberty bonds and made loans on other pieces of property, and I got the Bank of America to loan me one thousand on the Seventy-seventh street and Main lot to help pay for it." Therefore, and aside from any disputed claim of plaintiff's that he paid other sums toward the purchase of the bungalow court property, the fact that defendant utilized the property in which she at all times conceded plaintiff a one-half interest, to raise a substantial part of the purchase price paid for the bungalow court property, manifestly operated to vest in plaintiff an interest in the latter property.

The evidence further shows without conflict that during the operation of the partnership agreement plaintiff paid to defendant various sums of money, but the purpose of most of these payments is in dispute, plaintiff claiming that many of them were to be applied toward his share of the cost of the acquisition of said properties, and defendant claiming that all of them were made in settlement or partial settlement of accounts existing between them foreign to their real estate enterprises. In this regard the evidence shows that prior to the making of said agreement and while the parties were operating thereunder they entertained toward each other a friendly and social relationship which plaintiff asserted had culminated into an engagement to marry; but the existence of such an engagement was denied by the defendant. Be that as it may, it was clearly established that the real estate agreement grew out of the social relationship and that during the times mentioned plaintiff manifested implicit confidence in defendant and personally attended to many business matters for her in connection with other enterprises in which she was interested; and that incidental thereto he collected moneys due her and she advanced him money for expenses and reimbursed him for expenditures made in her behalf. As a result of these outside transactions the parties were frequently adjusting accounts and passing money back and forth.

Two of the payments made by plaintiff to defendant during the period mentioned were evidenced by checks, one dated November 7, 1921, for the sum of $200, and the other dated November 15, 1921, for the sum of $1,306. The real

purpose of these two payments is not clear. Plaintiff testified that $400 of the total sum thus paid constituted part payment of his share of the purchase price of the second parcel of land purchased, situate on the corner of Ninety-first Street and Moneta Avenue, which the evidence shows was selected by plaintiff, bought by defendant for a consideration of $2,000, one-half of which was paid by defendant at the time of its acquisition, and that said property was afterward sold for a consideration of $10,000, of which $2,500 had been paid at the time of the trial of this action. Defendant at one time in her testimony claimed that said checks were given in payment of plaintiff's share of the purchase price of the lot on the corner of Seventy-seventh and Main Streets, which was the first piece of property acquired under the agreement, but the record clearly proves that this statement was not true, because in another part of her testimony defendant admitted, and the evidence shows beyond question, that plaintiff advanced the entire purchase price of $1,500 for the acquisition of said lot and was afterward reimbursed by defendant by check for her half thereof; and still in another part of her testimony defendant claimed that said checks were given in payment of amounts due from plaintiff on other accounts. In the absence of an accounting, however, there is nothing in the record to prove that plaintiff was at that time indebted to her in the amount represented by the checks or in any other amount.

With reference to the purchase of the third lot, on the corner of Seventy-eighth and San Pedro Streets, defendant testified that the property was selected by plaintiff and purchased by her for $1,800; that she made a down payment thereon of $560, and afterward paid the balance; that she therefore claimed that plaintiff had no interest in said lot. After the breach between the parties occurred, however, and before suit was commenced, defendant prepared and submitted to plaintiff a statement of their accounts wherein she conceded to plaintiff one-half of the net sale price of the property last mentioned; but in explanation thereof she testified that plaintiff was entitled to such one-half ''provided he would pay up his half which he agreed to do.''

As to the fourth piece of property purchased, on the corner of Seventy-fifth and San Pedro Streets, the evidence shows without conflict that plaintiff selected said lot and

made the initial payment thereon of $50, and that defendant paid the balance of the down payment, amounting to $950. Defendant claimed, however, that the $50 paid by plaintiff was in liquidation of a like amount which plaintiff owed her on another account.

 It would appear, therefore, first, from the trial court's findings, that notwithstanding plaintiff failed to furnish his full quota of the purchase price of the four parcels last acquired, there was no termination of the agreement, but the parties continued to operate thereunder and to acquire property in defendant's name; and, secondly, from the uncontradicted evidence it appears that the first parcel of land acquired in which plaintiff admittedly owned a one-half interest was used in the acquisition of another parcel; that a small part payment was made by plaintiff on the purchase price of a third parcel, and that larger payments were made to defendant which he claims should have been applied toward his share of the cost of the acquisition of the remaining properties. Under such circumstances we think plaintiff was clearly entitled to an accounting, for it would seem that in view of the other transactions had between them in no other manner could the nature and extent of his rights in the property thus acquired be fully and fairly adjudicated.

Evidently the trial court's decision denying plaintiff any equitable relief was based upon the theory that plaintiff had not furnished the full one-half of the cost of said properties, for there was no finding to the effect that plaintiff did not furnish any portion of the cost of the acquisition of said properties, and in view of the foregoing evidence there could not be. As supporting the trial court's decision defendant in her brief quotes a rule of law set forth in the note appended to the case of *McDonough* v. *Saunders*, 201 Ala. 321 [78 South. 160], as reported in 11 American Law Reports, at page 432, which in part reads as follows: "The rule seems to be that a failure of a party to a joint adventure to contribute his share of the expenses is ground for abandonment of the enterprise by his coadventurers, and his exclusion from further operation by them, *provided*," the note continues, "they take definite steps to effect that result. They cannot, however, continue the enterprise,

using what he has contributed, or failing to notify him of the dissolution, and then exclude him from a share of the resulting profits. On the other hand, his failure may, in some instances, preclude his securing relief in a court of equity.'' (Italics ours.) The author of the note then proceeds to discuss and quote from cases arising in various jurisdictions wherein equitable relief had been denied, among them being *Miller* v. *Butterfield,* 79 Cal. 62 [21 Pac. 543]. But it will be found that in most, if not all, of the cases cited, such relief was denied because the defaulting parties wholly failed to contribute any part of the consideration for the purchase of the property. Such was the case of *Miller* v. *Butterfield, supra.*

In the present case, however, the trial court's findings show, as already pointed out, that although plaintiff did not furnish the full one-half of the cost of the acquisition of the properties as agreed, the agreement was not terminated upon that or any other ground, but remained in full force and effect and the parties continued to operate thereunder from the time it was made until after the bungalow court was erected. Under its terms all of the property in question here was acquired and the bungalow court was constructed, plaintiff having superintended the building thereof and paid practically all of the bills with about $8,000 advanced to him by ·defendant for that purpose. At no time did defendant attempt to abandon or cancel the agreement, but, on the contrary, continued to accept the benefits of plaintiff's services in selecting the property which she acquired in her name, and whatever money he may have contributed toward the purchase thereof, and afterward sold or operated said properties at large profits. Therefore, under the authorities cited, it was not essential, as the findings imply, for plaintiff to establish that he furnished the full amount of money agreed in order to obtain equitable relief. It was sufficient for him to prove a substantial compliance with the terms of said agreement or a waiver thereof by the defendant.

Furthermore, we find no evidence in the record to support the trial court's finding that the net sale price of the lot on Seventy-seventh and Main Streets was only $3,388.82. The evidence on this point was furnished by the

defendant. She testified that the lot sold for $5,000; and in the statement prepared by her prior to the commencement of the action she set forth the amount of plaintiff's one-half share thereof as being $2,473.50, indicating that the net sale price was $4,947. Assuming that the difference of $53 was deducted from the gross sale price as given in her testimony for the payment of taxes and expenses incidental to the sale, there would still be a balance of approximately $1,558.18 unaccounted for. In this connection the record shows that at the conclusion of the evidence the trial court called defendant to the witness-stand and the following proceedings took place: "The Court: How much do you admit the plaintiff is entitled to, according to your figures in the one house, in which you admit he has an interest, namely, Seventy-seventh and Main? . . . Q. All I want to know is the sum total, what you admit he is entitled to, half of the net profit? A. Half of—$3,388.75. Q. $1,694.37; is that correct? Mr. Eddie: That is correct. The Court: Is that what you get? Mr. Eddie: $1,694.37, yes, that would be correct. The Court: Plaintiff may have judgment for that amount." Apparently from the foregoing proceedings defendant and her attorney were allowed to fix the amount which was awarded to plaintiff as his one-half of the net sale price of said property, but how they arrived at the sum of $3,388.75 as being the net sale price instead of $4,947 as stated by defendant in her testimony is not disclosed. It may be fairly inferred, however, from other testimony given by defendant that she charged plaintiff with certain items claimed to be due on accounts foreign to the sale of that particular lot, which, in the absence of a full accounting, was obviously unfair to plaintiff.

For the reasons hereinabove stated the judgment is reversed.

Tyler, P. J., and Cashin, J., concurred.