[L. A. No. 14824. In Bank.—September 18, 1936.]

## W. L. McNENY, Respondent, v. WEATHERFORD W. TOUCHSTONE et al., Appellants.

Loyd Wright, Charles E. Millikan and James E. Neville for Appellants.

Shaw, Bailey & Poe and Charles D. Shaw for Respondent.

CURTIS, J.—This action for an accounting was brought by the plaintiff, who was a member of the copartnership composed of plaintiff and defendant Weatherford W. Touchstone under the firm name of McNeny & McNeny. The members of said firm entered into a written agreement dissolving said partnership and providing for a division of certain commissions upon a number of unfinished real estate transactions which the parties to the agreement anticipated would be consummated in the near future after the dissolution of said partnership. In this agreement the defendant Weatherford W. Touchstone purchased from the plaintiff the goodwill of the real estate brokerage business, which had

been carried on by the partnership, and the furniture and fixtures used in connection with said business. The defendant Weatherford W. Touchstone, immediately after the dissolution of the old firm, formed a new partnership with his brother, the defendant Blake Touchstone, and the new firm began business as real estate brokers in the same offices as those theretofore occupied by the old firm.

The controversy between the parties hereto grows out of the construction to be given to paragraph 8 of the dissolution agreement which reads, in so far as it affects our present purpose, as follows:

"8. It is expressly agreed that the parties hereto, have prior to the date hereof, expended a great deal of time and effort in preliminary negotiations on the proposed transactions hereinafter referred to, and that said parties agree, that if and in the event, within two years from the date hereof, any of the following transactions are consummated, all commissions accruing therefrom, shall be distributed as hereinafter specified, when and as said commissions are paid. In so far as this agreement is concerned, a transaction shall be deemed to have been consummated when a prospective purchaser, seller, lessor or lessee has been produced who is ready, able and willing to and thereafter does consummate a transaction upon terms acceptable to the clients involved in said proposed transactions. The obligations to divide said commissions shall extend to transactions consummated by either of the parties hereto, directly or indirectly or by any person employed by or associated with either of said parties.

"(a) If a lease is obtained for the W. T. Grant Company on any location on Broadway, between Third Street on the North and Tenth Street on the South, in Los Angeles, California, forty-five (45%) per cent of the gross commission received by such of the parties hereto as may receive or be entitled to receive such commission for obtaining said lease, shall be paid to the other when and as such commission is received.

"(f) If a transaction is consummated for a hotel in Hollywood, San Diego, Fresno, Oakland, Bakersfield, Los Angeles or San Francisco, in California, or Portland, in Oregon, forty-five (45%) per cent of the gross commission received by such of the parties hereto as may receive or be entitled to

receive such commission for negotiating said transactions, shall be paid to the other, when and as such commission is received.''

This agreement was dated October 1, 1931, and within two years thereafter the lease referred to in subdivision (a) was obtained for the W. T. Grant Company at the location mentioned in said subdivision, on which a commission in the sum of $25,000 was paid. There was associated with defendants in obtaining said lease the firm of Coldwell, Cornwall & Banker, and the commission was divided one-half to said firm and one-half to defendants. The commission was not paid in cash but by the execution of three promissory notes executed by the lessors named in said lease, one in favor of Coldwell, Cornwall & Banker in the sum of $12,500, one in favor of defendant Weatherford W. Touchstone for the sum of $8,333.33, and one in favor of defendant Blake Touchstone in the sum of $4,166.67.

Within the two-year period specified in said agreement of dissolution there was also consummated through the efforts of defendants a transaction for the Mayflower Hotel in the city of Los Angeles, which transaction the parties hereto admit is covered and controlled by subdivision (f) of paragraph 8 of said agreement of dissolution. In this transaction the commission was $5,000, and the necessary expense incurred in connection with said transaction was the sum of $1287.50, leaving the sum of $3,712.50 as the net commission received by defendants in consummating said transaction. This sum was paid to defendants in the following proportions, one-third thereof, or the sum of $1237.50, to the defendant Weatherford W. Touchstone, and two-thirds thereof, or the sum of $2,475, to the defendant Blake Touchstone.

Plaintiff contends that he is entitled to 45 per cent of the $12,500 notes received by defendants for services rendered in obtaining the W. T. Grant Company lease, and 45 per cent of $3,712.50, the net commission received by defendants in the transaction for the Mayflower Hotel. On the other hand, the defendants contend that plaintiff is entitled only to 45 per cent of what the defendant Weatherford W. Touchstone himself received as commissions in consummating the two transactions involving the lease to W. T. Grant Company and the Mayflower Hotel, and that plain-

tiff has no interest in or right to any part of the commission which was paid to defendant Blake Touchstone. The case in the superior court was tried by the court without a jury, and resulted in findings and judgment in favor of the plaintiff and against both the defendants. The defendants have appealed, and, in support of their contentions above noted and of their appeal, rely upon the provisions of section 8 of the agreement of dissolution quoted above. The defendants concede that the trial court construed this section of the agreement against them, but contend that the court erred in its construction of the agreement for the reason that this section of the agreement is clear and unambiguous and definitely limits the obligation of the defendant Weatherford W. Touchstone to account to plaintiff for 45 per cent of the amount actually received by said defendant as commissions for consummating said transactions. It is the position of said defendant, as well as his codefendant Blake Touchstone that defendant Weatherford W. Touchstone, in consummating said transaction, could associate with himself his partner, Blake Touchstone, or any other real estate agency, and pay to the person or firm so associated any part of said commission agreed upon between them, and that defendant Weatherford W. Touchstone would only be accountable to the plaintiff for 45 per cent of the commission, after deducting that part of said commission paid to the real estate broker associated in said transaction. Defendants rely in support of their aforesaid contentions upon the provision of said agreement of dissolution which is substantially the same in both subdivision (a) and subdivision (f) of said section 8, and which provision specifies as the basis of the division of commissions in consummating said transaction that "forty-five (45%) per cent of the gross commission received by such of the parties hereto as may receive or be entitled to receive such commission for obtaining said lease (or negotiating said transaction) shall be paid to the other when and as such commissions shall be received". It will be noted that this provision refers to "forty-five (45%) per cent of the gross commission received by such of the parties hereto as may receive or be entitled to receive such commission". In other words, the agreement provides that the party consummating the transaction

shall pay to the other party to said agreement forty-five per cent of the gross commission received by the former. This provision of the section says nothing about employing others to assist in said transactions, nor that the compensation of the latter shall be deducted from the commission received, and the difference or net commission shall then be divided between the parties in the proportion stated in the agreement. It does refer to the "gross commission" as the subject-matter of the division. Just what the parties intended to refer to when using these words we are not certain from the reading of the agreement. This uncertainty in the agreement is further augmented by the sentence in section 8 just preceding subdivision (a) reading as follows: "The obligations to divide said commissions shall extend to transactions consummated by either of the parties hereto, directly or indirectly or by any person employed by or associated with either of said parties." Here is a clear intimation that the parties to the agreement intended that either party might employ others to assist in consummating transactions enumerated in said section 8. Of course, the power to employ would include the power to pay for the services of the person so employed. In case a transaction was consummated through the efforts of a person employed, the party employing him would of course receive the commission, and would then compensate his employee. In such a case, would the amount received in the first instance be the "gross commission" subject to division, or would it be the amount remaining after the employee had been paid? The same question would arise if the transaction were consummated by the efforts of an associate instead of a mere employee. The "gross commission" received by the principal might, according to the intent of the parties, be either the entire commission received for consummating the transaction, or it might be that sum, less the amount paid to the employee or the person associated in the transaction. We are not willing to hold that the agreement is clear and unambiguous in that respect. The trial court was of the opinion that the agreement was ambiguous, and admitted evidence, both oral and documentary, for the purpose of ascertaining its true meaning. Included in the evidence so admitted was a letter dated September 30, 1931, just one day

before the date of the agreement of dissolution, and written by defendant Weatherford W. Touchstone to the plaintiff, in which the writer purported to set forth the verbal understanding between him and the plaintiff as to the terms of the agreement which was to terminate their partnership. In this letter Weatherford W. Touchstone expressly refers to the W. T. Grant Company lease and to ''a deal for a hotel'' in any of the cities enumerated in subdivision (f) of section 8 of the dissolution agreement, and states ''You [meaning the plaintiff] are to receive 45% of the gross commission accruing to Touchstone and Touchstone.'' While all the terms of this letter were not embodied in the agreement, a number of them were set forth therein in substantially the same language as that used in the letter. This letter clearly shows it was the intention of Weatherford W. Touchstone, at the date on which he wrote said letter, that the commission received from the W. T. Grant Company lease and the Mayflower Hotel transaction was to be divided by the payment, in case these transactions were consummated by Weatherford W. Touchstone or by the firm of Touchstone and Touchstone, to plaintiff of 45 per cent of the commission received by Touchstone and Touchstone.' While this firm had not yet been formed, the evidence shows, and particularly the letter of Weatherford W. Touchstone to the plaintiff, that its formation was contemplated at the time said letter was written. With this letter and other evidence before it, the trial court construed the dissolution agreement as providing that the commission received for consummating these two transactions was to be divided upon the basis of the plaintiff being paid 45 per cent thereof.

This construction appears to be consistent with the intent of the parties, and where the construction given an instrument by the trial court appears to be consistent with the true intent of the parties, the appellate court will not substitute another construction although it seem equally tenable. (*Kautz* v. *Zurich etc. Ins. Co., Ltd.*, 212 Cal. 576 [300 Pac. 34]; *Farmers & Merchants' Nat. Bank* v. *Bailie*, 138 Cal. App. 143, 149 [32 Pac. (2d) 157]; *Slama Tire Protector Co.* v. *Ritchie*, 31 Cal. App. 555 [161 Pac. 25]; *Manley* v. *Pacific Mill & Timber Co.*, 79 Cal. App. 641, 648 [250 Pac. 710].) In the last-mentioned case the court elaborates

upon the above rule in the following manner: "On the other hand, if the contract is ambiguous, so that there might be two possible constructions, then we agree with the respondent that the law as set forth in 6 California Jurisprudence, 327, and also in the case of *Slama Tire Protector Co.* v. *Ritchie,* 31 Cal. App. 555 [161 Pac. 25], applies. Hence, if the construction given by the trial court is one which is tenable, and one which appears to us consistent with the true intent and meaning of the parties, it would not lie within the province of an appellate court to set aside the judgment of the trial court and substitute its own interpretation, simply because another interpretation thereof is also possible."

Defendants appear to place some reliance upon an agreement entered into between themselves whereby they agreed that their partnership arrangement would not extend to the W. T. Grant Company lease or the Mayflower Hotel transaction. It is difficult for us to perceive how any agreement between these defendants would affect any rights of the plaintiff who was not a party to said agreement and did not have any information as to its execution or its contents. Particularly is this so in the instant case where such an agreement would be diametrically contrary to said letter written by defendant Weatherford W. Touchstone to plaintiff.

Defendant Blake Touchstone strenuously contends that in no event should any judgment be rendered against him. He states that he was not only not a party to said dissolution agreement, but expressly refused to be made a party to or sign the same. All of which is true. He was, however, fully acquainted with the contents of said agreement prior to the time he rendered any services in connection with either of said transactions. With his brother, who was bound by the terms of the agreement, he formed a copartnership within a week after the dissolution of the firm of McNeny & McNeny. His brother had purchased the goodwill of the retiring firm and, with some exceptions, the furniture and fixtures of the old firm. These were all used by the new firm as were also the offices of the old firm. The evidence shows that the new firm continued the real estate leasing business theretofore conducted by the old firm

and the court found that the new firm, and not the individuals comprising it, concluded said negotiations which resulted in their receiving said commissions. This finding is supported by all the facts in the case bearing upon that issue. Notwithstanding the agreement between the defendants that this partnership should not include the W. T. Grant Company lease nor the Mayflower Hotel transaction, the evidence all tends to show that the new firm performed all services rendered in connection with the consummation of these two transactions, except that performed by the firm of Coldwell, Cornwall & Banker, and that the commissions received on these two transactions were received by the defendants as members of the new firm. Each partner is jointly and severally liable for the debts and obligations of the firm. (Civ. Code, sec. 2409.) ▇ Besides, the commission accruing from the transactions enumerated in said dissolution agreement was partnership property of the old firm. It is true that the old firm had been dissolved, but the partnership character of the property continued until the interest of the partnership therein was terminated. (Sec. 2424, Civ. Code; *Citizens Nat. T. & S. Bank* v. *McNeny*, 10 Cal. App. (2d) 488 [52 Pac. (2d) 492].) The defendant Blake Touchstone knowingly received these partnership funds, and he therefore is accountable to the plaintiff in this action for an accounting for all property of the old partnership received by him.

▇ In a supplemental answer the defendant Weatherford W. Touchstone set up as a defense in this action the fact that since the commencement of this action all funds in his hands belonging to the plaintiff had been attached and subsequently sold under execution issued out of the Superior Court of the County of Los Angeles in the case of *Citizens Nat. T. & S. Bank* v. *Walter L. McNeny*, the plaintiff herein, and that as a result of said attachment and sale the plaintiff herein has no interest in the subject-matter of the present action. It appears that the attachment and execution issued in the action of the Citizens National Trust & Savings Bank against plaintiff were subsequently dissolved by the court in which they were issued and the order dissolving the same was affirmed. (*Citizens Nat. T. & S. Bank* v. *McNeny*,

*supra.*) The affirmance of this order is a complete answer to the defense set up in said supplemental answer.

The judgment of the trial court is affirmed.

Shenk, J., Thompson, J., Seawell, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.