[Civ. No. 3122. Fourth Dist. Mar. 23, 1944.]

PEDRO LARREY et al., Respondents, v. GROVE M. SELLERS, Appellant.

Chester R. Andrews for Appellant.

Thomas F. Lopez and Lawrence W. Young for Respondents.

GRIFFIN, J.—Plaintiffs brought this action against defendant setting forth in one count an action on a promissory note in the sum of $1,582.83. The second count arose out of a dairy deal between the parties. The defendant leased to plaintiffs certain land in Fresno for the purpose of conducting a dairy thereon. The term of the lease was three years and provided, in substance, that the defendant was, on or before May 1, 1940, to build a grade "A" barn on the land for 30 cows and was to furnish, among other things, necessary feed for the cattle. Plaintiffs guaranteed that each cow would produce 300 pounds of butterfat per year per 1,000 pounds live weight and that they would milk and care for the cows. The defendant was to receive as rental for the land, feed and other things furnished, one-half of the gross receipts from the sale of the milk and butterfat from plaintiffs' cows. The butterfat was to be averaged at the expiration of each twelve month period and in the event the cows should fail to average 300 pounds of butterfat per 1,000 pounds live weight per cow the difference was to be computed at the average price received for the butterfat throughout the preceding twelve month period, and plaintiffs were to reimburse the defendant for one-half of the deficiency. In the event the butterfat average exceeded 300 pounds per year per 1,000 pounds live

weight per cow, the defendant was to receive 40 per cent and the plaintiffs 60 per cent of the gross amount received from the sale of all butterfat in excess of 300 pounds per year per cow.

The defendant failed to construct the barn called for in the agreement. In 1942, because of the failure of the defendant to construct the barn, differences arose between the parties. They later entered into another written agreement determining their rights and terminating the previous agreement. In negotiating the last contract the defendant was represented by an attorney of his own choosing. It reads in part as follows:

"2. That in determining the amount of butterfat produced on said premises from May 1st, 1940 (the beginning of the period of said lease) to June 30th, 1942, a four per cent (4%) increase of butterfat is to be allowed over the amount actually delivered and sold, plus 600 gallons of milk a month hereinafter mentioned to compensate lessees for the failure of lessor to build a feed barn as provided in said lease.

"3. The figures to be used in determining the amount of butterfat produced are to be the figures of the creameries to which the milk and butterfat were sold, plus 600 gallons of milk per month which is an allowance for milk used for domestic consumption, feeding of calves, etc."

It was stipulated at the trial as to the amount of butterfat that was actually produced from May 1, 1940, to June 30, 1942, and also as to the average price per pound received. Based upon the statistics submitted and agreed upon between the parties, a certified public accountant concluded that there was due to plaintiff, under their agreement, $574.42. A written copy of his report was received in evidence. From the stipulations and the evidence, the problem resolved itself into a mathematical calculation to determine what plaintiffs were to receive on account of their second cause of action. The court found, in substance, that plaintiffs should recover from defendant on their first cause of action the sum of $1,582.83 principal and $113.14 interest. On the second cause of action it found that defendant owed plaintiffs $559.87, upon which defendant was entitled to a credit of $372.81, which left a balance due plaintiffs thereon in the sum of $187.06.

Defendant stated that there was no dispute as to the amount due on the note except he believed he was entitled to a certain claimed offset. The trial court allowed him most of the claimed

offset, on plaintiffs' second cause of action, which was proper.

The lower court properly construed the contracts to mean that, in addition to the 600 gallons of milk per month allowance made to the plaintiffs for domestic consumption, feeding of calves, etc., there should be calculated 4 per cent of the 600 gallons per month.

The defendant contends that the trial court violated the plain language of the contracts in so doing and that the compromise agreement can only mean that the 4 per cent increase of butterfat and the 600 gallons of milk per month are figures to be substituted for actual production, under which actual production the parties would have received from the creameries an equal division of proceeds from such increase and that the compensation to the plaintiffs consists of the relief given them under the new agreement in spite of their failure to live up to their guaranty.

It appears from the certified public accountant's report that in computing the amount due under the two agreements, he took into consideration "two distinct adjustments" regarding the failure to construct a barn. He allowed: "1. An adjustment between the 50-50 and 40-60 basis of revenues which would have been received in excess of guaranteed production; and 2, an adjustment by lessor for one-half of the 4 per cent allowance to lessees due to the fact that lessees would have realized such amount from sale of butterfat if actually produced and would, at the same time, have been developing the excess production benefits allowed by the original contract." This was demonstrated by statistics set forth in the report. The court has placed the same construction on the agreements, which construction appears to be reasonable, in accordance with the intent of the parties, and therefore cannot be disturbed on appeal. (*McNeny* v. *Touchstone,* 7 Cal.2d 429, 435 [60 P.2d 986].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.