RALPH P. FREESE, Respondent, v. R. V. SMITH, Appellant.

Cooley, Crowley & Gaither for Appellant.

Albert Picard and Raymond N. Baker for Respondent.

GOODELL, J.—This appeal is from a judgment for $5,115.47 and interest, in an accounting suit arising out of a partnership between the litigants, which existed from April 1, 1945, to July 5, 1946.

Both parties were experienced fire insurance adjusters who had been engaged in that work in San Francisco for many years.

On February 17, 1944, they made a contract wherein respondent agreed to assist appellant in his established adjustment business, and appellant agreed to pay him either a sum equal to 20 per cent of the annual net income of the business or 75 per cent of the increase of its annual net profits in excess of $17,559.91, whichever was greater, to be computed quarterly, commencing on April 1, 1944. Respondent was allowed a monthly drawing account of $300, his withdrawals to be deducted from his ultimate earned percentage.

On May 24, 1945, they made a second contract wherein they agreed to continue the same business as partners under the name of "The R. V. Smith Company" which arrangement was terminated on July 5, 1946. After the latter date each of the parties was engaged for some months in winding up the firm business then on hand.

Thus three periods were embraced in the accounting, the first called the "association period," the second the "partnership period" and the last the "winding up period."

The business consisted of the investigation and adjustment of claims for fire losses which the insurance companies referred to them. When these claims came in they were generally divided up between the parties in a routine way. Occasionally, however a company would ask that appellant handle a particular loss in the absence of which request the firm's secretary would distribute the work between the two except that the larger losses were usually handled by appellant and the smaller ones by respondent. It was the fixed practice, however, that once the claim was turned over to one or the other it continued in his hands right through to its completion. On July 5, 1946, each of the parties had in hand, in process of investigation and adjustment, a number of these claims and it was agreed between them that each would continue to handle the ones he then had until their completion.

The principal controversy centers around the credits coming to respondent arising from the claims which had come into the office as new business during the period April 1, 1945-July 5, 1946, but which were not concluded until the "winding up period."

The partnership articles recited the earlier association of the parties, and that they desired "that from April 1, 1945, this association be continued on a partnership basis." Paragraphs 4, 7, 8, 9 and 10 read as follows:

"4. There shall be a quarterly auditing account of income and general office expenses. The net profits as disclosed by this audit will be divided 66⅔% to R. V. Smith and 33⅓% to Ralph P. Freese less the sums, not including the personal business expense as drawn by each party during the current period of each quarterly audit. This division of net profit is to be drawn and paid quarterly . . .

"7. It is herewith provided that in case of death or retirement of either party to this partnerhip, the business, good will, firm name, office equipment, records and printed matter and all outstanding indebtedness will revert in their entirety to the surviving or succeeding partner, without compensation or distribution to any beneficiary of either estate, except as provided in paragraph No. 8.

"8. The surviving member as set forth in paragraph No. 7, shall assume the responsibility and shall complete and close any pending losses of the other and shall turn over all fees and unpaid expense thereon to the beneficiaries of the deceased member or to the member himself in the case of his retirement from any cause. There shall be a reasonable deduction for a fair and equitable charge for services in closing such files.

"9. This agreement shall remain in force and effect for a period of two years and be automatically reinstated and continued each year thereafter unless cancelled as herein provided or unless otherwise terminated. This agreement may at any time be subject to any amicable agreed amendments.

"10. This agreement may be cancelled by either party by giving thirty days notice of· cancellation or termination to the other party. In this event, the method of disposing of pending business shall be on the basis provided in paragraph No. 8. The value of the furniture and fixtures is agreed to be $1,500.00, with interest in same as $1,200.00 to R. V. Smith and $300.00 to Ralph P. Freese."

The trial judge wrote an opinion which incorporated a statement of the account between the parties. This statement speaks of "claims assigned," which means claims or proofs of loss referred and turned over to the office by insurance companies for investigation and adjustment of fire losses.

It shows clearly and graphically just how the judgment of $5,115.47 was arrived at by the court. It is as follows:

*"Association period*

Income from claims assigned during period
4/1/44 to 3/31/45 ............................... $22,287.52
Work in process at 3/31/45 reduced to income
in subsequent period .......................... 12,739.32

                                                   $35,026.84
Less expenses ...................................... 8,747.91

                              $26,278.93
Deduct: Alternative agreed base ..................... 17,559.91

                              $ 8,719.02

75% of $8,719.02 .........................$6,539.26
Less: withdrawals ........................ 4,318.83

Due plaintiff ............................$2,220.43

*Partnership period*

Income from claims assigned during period
4/1/45 to 6/30/46 ............................... $42,289.36
Work in process at 6/30/46 reduced to income
subsequently
  By R. V. Smith ...................... 12,013.38
  By R. P. Freese ..................... 2,315.05     14,328.43

                              $56,617.79
Less expenses ...................................... 13,462.69

                              $43,155.10

33 1/3% of $43,155.10 ....................$14,385.03
Less: withdrawals ....................... 11,489.99

Due plaintiff ...........................$ 2,895.04

                           *Summary:*

Due plaintiff:
    From association period ..........$2,220.43
    From partnership period .......... 2,895.04

    Total ........................$5,115.47"

Shortly before the trial the litigants agreed on accountants to audit the books. The audit shows that during the partnership period $42,289.36 was earned by the firm on business which came in between April 1, 1945, and June 30, 1946. It shows also that during the "winding up period" $14,328.43 was reduced to income from business in the hands of both partners which had come in prior to July 5, 1946. The item

of $2,220.43, shown as owing to respondent as the product of the "association period," is not questioned by appellant.

Appellant contends that the court erred in treating the $14,328.43 (reduced to income during the "winding up period") the same as it did the $42,289.36 (reduced to income during the "partnership period" proper) which meant, of course, that respondent got his full 33⅓ per cent participation in the "net" of the heldover business *handled by both parties*.

The main basis for appellant's attack was the claim, set forth in his separate defense, that on the termination of the partnership the parties "agreed upon a settlement of their obligations as partners, one to the other, and plaintiff agreed to accept, and did accept, in full satisfaction of all his interest in the assets of said partnership, and in full satisfaction of all defendant's obligations and liabilities to him, certain furniture and office equipment and certain unfinished insurance loss adjustment matters belonging to said partnership." The court found flatly against this defense, and in its opinion said: "This contention in my opinion is not borne out by and is inconsistent with the evidence. In particular it is inconsistent with the testimony of plaintiff which I find to be entirely credible that about August 13th, 1946 he asked Smith for an accounting and that Smith said that plaintiff should wait until the accounts were closed and the firm bills paid. Thereafter and in October according to Freese defendant offered to pay him . . . $2500.00 in settlement of his claim which offer plaintiff refused. On or about January 8th, 1947, according to Freese, Smith informed him that he owed Freese . . . $4200.00 which sum Freese refused to take as being inadequate. Such an offer was of course entirely inconsistent with defendant's whole position in the case. I may add that all of this evidence of offers of settlement went in without objection."

No attack is made by appellant on the sufficiency of the evidence to support the finding against appellant on his separate defense.

One inconsistency in appellant's position has just been pointed out. Another is found in appellant's contention that an "accounting between partners is to be governed by the co-partnership agreement" (*Mervyn Investment Co.* v. *Biber*, 184 Cal. 637, 644 [194 P. 1037]) in the face of the special

defense just noted, that the parties made another agreement on or about July 5, 1946.

But over and above these inconsistencies, appellant's claim that the terms of the partnership agreement are controlling is difficult to follow since there is no attempt to show how such terms could possibly furnish a method or pattern for the accounting.

Section 10, under which appellant brought the partnership to a "cancellation or termination" by a 30-day notice, provides that in such event "the method of disposing of pending business shall be on the basis provided in paragraph No. 8." Paragraph 8 must be read with paragraph 7 which deals only with death or retirement, in either of which events there would really be a surviving member. Neither paragraph 7 nor 8 was designed for, or can be made to fit, a case such as this, as a glance at them will show. Moreover, the testimony of both parties shows that they agreed that each would wind up the business then unfinished in his own hands, which eliminates all idea of a "surviving member" or a "succeeding partner."

The record shows no evidence of any attempt by the partners themselves to follow paragraphs 7 and 8 in "disposing of pending business."

Accordingly the court had to follow general rules and principles governing dissolutions.

Section 15021, Corporations Code, provides: "(1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property . . ."

Section 15026 reads: "A partner's interest in the partnership is his share of the profits and surplus . . ."

Section 15029 reads: "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."

Section 15030 reads: "On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."

These sections were enacted in 1949, but they are simply repetitions of the law as formerly found in Civil Code, sections 2415, 2420, 2423 and 2424 respectively.

■ In *Cotten* v. *Perishable Air Conditioners,* 18 Cal.2d 575, 577 [116 P.2d 603, 136 A.L.R. 1068] the court said: "In general a dissolution operates only with respect to future transactions; as to everything past the partnership continues until all pre-existing matters are terminated [citations]. The dissolution does not destroy the authority of a partner to act for his former associates in matters in which they still have a common interest and are under a common liability [citations]."

In *McNeny* v. *Touchstone,* 7 Cal.2d 429, 437 [60 P.2d 986], the court said: "Besides, the commission accruing from the transactions enumerated in said dissolution agreement was partnership property of the old firm. It is true that the old firm had been dissolved, but the partnership character of the property continued until the interest of the partnership therein was terminated. (Sec. 2424, Civ. Code; *Citizens Nat T. & S. Bank* v. *McNeny,* 10 Cal.App.2d 488 [52 P. 2d 492].)"

In *Osment* v. *McElrath,* 68 Cal. 466, 469 [9 P. 731, 58 Am. Rep. 17] the court said: "The business was intrusted to the firm, and it was the duty of both parties to conduct it to an end. This duty they owed to the clients and to each other, and it continued after the dissolution as to all unfinished business."

See, also, *Page* v. *Summers,* 70 Cal. 121, 128 [12 P. 120] and *Yahr-Donen Corp.* v. *Crocker,* 80 Cal.App.2d 675, 678 [182 P.2d 209].

■ Appellant's contention that the business which he handled and concluded during the "winding up period" ($12,013.38) was his own and that the business which respondent handled and concluded during the same period ($2,315.05) was *his* own, does not square with these rules. All the business had come into the office as firm business and both partners remained obligated until it had been completed and, accordingly, the provisions of paragraph 4 remained in effect until the last loss was adjusted, whether handled by appellant or respondent. The court's action, in our opinion, was correct on this, the main phase of the litigation.

After awarding the $5,115.47, the judgment awards interest thereon at 7 per cent per annum from June 30, 1946. This comes to $1,521.85.

■

The evidence shows that the "winding up period" extended into March of 1948 which was some eight months after suit was commenced and almost two years after the time at which the judgment started the running of interest. To put it another way, June 30, (or July 5) 1946, was the time when liquidation started and the accounting shows that there was business then on hand which, as it turned out, produced earnings of $14,328.43. That amount, however, did not become settled or determined until the court stated the account at the end of the trial, which was *almost four years after interest was made to run* by the terms of the judgment.

In support of this allowance of interest respondent relies on *Bowman* v. *Carroll*, 120 Cal.App. 309 [7 P.2d 734] which states the general rule as follows: "The general rule regarding interest upon partnership accounts is stated in 47 Corpus Juris, page 1182, section 876, to be as follows: 'Ordinarily interest is not allowed on unascertained balances remaining in one partner's hands after dissolution of the firm. But where the circumstances are such as equitably demand payment of interest, it will be allowed from the time when the partnership accounts should have been settled, as where one partner has retained the money an unreasonable time, or where he is wrongfully withholding it.' " It should be noted that interest was allowed there from the date of the filing of the complaint, while here it was allowed from a date *a whole year before the complaint was filed*. There the court justified the allowance of interest as follows: "These properties were in defendant's name, and she sold them and kept the entire proceeds, denying the partnership and all liability. Respondent was forced into two trials in the superior court, and two appeals, and more than six years have elapsed since the complaint was filed. In the books which appellant kept, where she referred to one parcel, the words 'W. J. Bowman (respondent herein) owns one-half interest' were stricken out. An entry in respect to another parcel was similarly 'corrected' by appellant. The allowance of interest as made by the court was equitable, just and proper under such circumstances."

"The four factors which appealed to the court's sense of equity in that case were (1) defendant sold partnership assets and kept the proceeds; (2) she denied the existence of the partnership and all liability thereunder; (3) she prolonged the litigation (see *Bowman* v. *Carroll*, 91 Cal.App. 56 [266 P. 840]), and (4) she altered book entries which had ad-

mitted plaintiff's partnership interest. None of these factors nor anything approaching them, appear here, and respondent has not attempted to point out any conduct of appellant which would make this case an exception to the well-settled rule which *Bowman* v. *Carroll* itself recognizes. No other case than that is relied on, and it, we think, is clearly distinguishable.

The findings, conclusions of law, and judgment should be amended by striking from each thereof the provision following the award of $5,115.47, to wit: "together with interest thereon at the rate of seven (7) per cent per annum from June 30, 1946."

As so modified the judgment is affirmed, without costs to either party.

Nourse, P. J., and Dooling, J., concurred.

[Civ. No. 14928.  First Dist., Div. Two.  Nov. 20, 1952.]