[Civ. No. 4470. Third Appellate District.—February 14, 1933.]

THOMAS D. WATSON, Plaintiff and Appellant, v. F. W. KELLOGG et al., Respondents; F. W. KELLOGG, Defendant and Appellant.

Jones, Stephenson, Palmer & Moore for Plaintiff and Appellant.

Ford & Ford, W. Joseph Ford, J. F. Moroney and Patrick F. Kirby for Defendant and Appellant.

TUTTLE, J., *pro tem.*—This is an action for an accounting between partners, and also to have certain real property, held in the names of third parties, adjudged to belong to the partnership. A dissolution of the partnership was also prayed for. The judgment of the court established the partnership, and the sum of $2,777.57 was awarded to plaintiff as his share of the profits. As to the real property held by the third parties, it was found that the partnership had no interest therein. Plaintiff and defendant F. W. Kellogg were each dissatisfied with the outcome and each has appealed from the judgment.

The following findings of the court are assailed as not supported by the evidence:

## "III

"That on or about the 8th day of October, 1921, in the City of Glendale, California, said plaintiff and said defendant F. W. Kellogg formed and entered into a verbal partnership agreement for the buying, handling and selling of real estate in the City of Glendale, Caifornia; that at the time said partnership agreement was formed, plaintiff was a resident of the City of Glendale, California, and the defendant F. W. Kellogg was a resident of the City of Altadena, California; that under the terms of said partnership agreement plaintiff was to use his knowledge of values of real estate and to get the aid of others who knew the values of real estate in said City of Glendale and to locate and recommend to the defendant F. W. Kellogg pieces of real property in said City of Glendale for the purchase of the same by said partnership; that said plaintiff was to use his knowledge of realty values and give his time and his labor in connection therewith, and said defendant F. W. Kellogg was to finance with his money or his credit, or both, the purchase and handling of such pieces of real estate, so found and presented by the plaintiff to him, and which were deemed by the plaintiff and defendant F. W. Kellogg to be good properties to be purchased and handled for profit by the said partnership; that under the terms of said partnership agreement said plaintiff and said defendant F. W. Kellogg were to divide equally when the properties were sold all profits derived from the sale or sales.

## "IV

"That on or about said 8th day of October, 1921, plaintiff and said defendant F. W. Kellogg, as such partners and not otherwise, commenced to carry on in said City of Glendale said real estate business of said partnership."

A partnership, such as is described in this finding, may be created by parol. (*Arnold* v. *Loomis*, 170 Cal. 95 [148 Pac. 518].) An examination of the evidence shows that there is abundant evidence to sustain the finding. For instance, plaintiff testified as follows: "Mr. Kellogg said, 'Captain Watson, what do you think about us going into a partnership for the purchase of several business properties, preferably on Brand Boulevard?' . . . Then I replied that I would like to very much, and asked him what I would have

to do in it. He said, 'You procure the properties, use your knowledge of real estate and find out where the properties are and submit them to me and we will talk them over and if we decide they are good buys we will buy them and I will furnish the money—either the money or the credit.' And I asked Mr. Kellogg again how about the profits, and he says, 'We will divide the profits between us fifty-fifty.' "

Two days after this conversation, the plaintiff had a conversation with the defendant F. W. Kellogg in an automobile in front of the Glendale Press building, as follows: "I told Mr. Kellogg of two properties, lot 43, which was listed with Mr. Kelly by Mrs. Orff— . . . Lot 43 in the Glendalia Park tract and another property which Mr. Kelly had listed belonging to Lawson and Becker, Edna M. Lawson and Morea M. Becker— . . . Lot 46 and the north half of Lot 45. . . . I told him the price; the price of lot 43 was $10,000 at that time, and the price of the 25 feet of lot 45 and 50 feet of lot 46 was $15,000. And I told him that I considered the properties very good buys and he agreed with me they were good buys and for me to see what I could do about buying them . . . for the partnership."

Again plaintiff testified as follows: "I told Mr. Kellogg that the purchase was made with the understanding that the street bonds should be taken care of, and that was all at that time. So when we went up to the escrow Mr. Kellogg told Mr. Kelly that under no circumstances would we stand the street bond, and Mr. Kelly turned to me and he says, 'Watson, why don't you stand it?' And Mr. Kellogg says, 'What difference does it make whether he stands it or I stand it? It is the same thing, because we are partners in this purchase.' "

Witness Baker also testified that defendant Kellogg told him that Captain Watson and he were partners.

The trial court found that under this partnership agreement the parties bought and sold lot 43 in Glendalia Park Tract, Los Angeles County, and lot 46 in the same tract, and that plaintiff was entitled to receive, as one-half of the net profit from the sale of lot 43, the sum of $1214.13, and also the sum of $1563.44 as one-half of the net profit from the sale of lot 46.

Appellant Kellogg contends that there is no evidence to support the finding that lot 43 was purchased by the

partnership, or that it was sold at any profit. The court found that this lot was purchased by the partnership and that the net profit resulting from said sale was $2,428.26, and that plaintiff was entitled to judgment for one-half thereof, or $1214.13. The evidence is sufficient to support such findings. The title to this property was taken in the name of defendant Kellogg's daughter, Dorothy McKellar, and appellant Kellogg contends that it was not a partnership affair. The trial court held otherwise, upon sufficient evidence. It is shown beyond dispute that plaintiff first brought the purchase of this property to the attention of Kellogg, and arranged the terms of purchase. In the presence of the escrow clerk in the bank and of plaintiff, Kellogg stated, in answer to a question by the clerk as to who should stand certain expenses, either himself or plaintiff: "What difference does it make whether he stands it or I stand it? It is the same thing, because we are partners in this purchase." There is evidence to the effect that the property was taken in the name of the daughter in order to facilitate the financing of the deal upon the part of Kellogg. The trial court evidently concluded that the taking of the property in the name of Kellogg's daughter was a mere subterfuge, and this would appear to be correct. It was conceded that the property was bought for $10,500 and sold for $13,500. This leaves a gross profit of $3,000. The computation of expenses is not disputed, and there is ample evidence to sustain a finding that the amount of net profit due plaintiff was $1214.13.

The next contention is that the evidence is not sufficient to support a finding that the share of net profits due plaintiff from the sale of lot 46 was $1563.44. The evidence shows without dispute that this property, together with the adjoining half of lot 45, was purchased by the copartnership for $15,000. Thereafter lot 46 was sold for $13,500. It was stipulated that the market value of lot 46 was $10,000. As these two parcels were bought for $15,000, and it was agreed that the market value at that time of lot 46 alone was $10,000, the court found that the gross profit from the sale was $3,500. In other words, in the absence of direct evidence of the cost of this lot 46 alone, the court inferred that the cost was its market value at the time of the purchase. These two lots were adjacent and had a combined frontage

of 75 feet. The price paid for both was $15,000, or $200 a front foot. Lot 46 had a frontage of 50 feet. There is nothing in the record to indicate that there was any difference in value, per front foot, between these two lots. We believe that the method of arriving at the cost of lot 46 was proper, and that the evidence supports the finding upon this point.

The chief complaint made by appellant Kellogg in respect to the finding as to the profit made upon this sale is that Kellogg did not receive cash, but took, as the purchase price, the north half of lot 45, a mortgage for $8,000 upon lot 46, stock in the Glendale Press worth $700, and some cash. Mr. Kellogg put some $9,000 in cash in the deal, they state, and had less than $500 in cash when the deal was concluded. Of $7,500 paid to Kellogg in escrow, $6,000 was devoted to paying off two mortgages. After the payment of expenses he had some $500 remaining. It is appellant Kellogg's contention that the court erred in rendering a money judgment against him for plaintiff's share of the net profits ($1563.44); that no such judgment could be rendered until the "paper items" received as part of the purchase price were reduced to cash, and that until that was done, there was no "profit" whatever to anyone. He argues that one partner is given cash, while the other is compelled to take "paper", which included an $8,000 mortgage upon the lot. There is nothing to indicate, in the record, that this "paper" was not worth its face value, and the trial court was justified in assuming that it was. To say that a portion of the profit was not in cash, but was in "paper" which was worth its face value in cash, is an attempt to draw a distinction which is too finely spun for the conduct of ordinary business affairs, nor should even a super-technical judiciary lend its ear to such a plea. Here appellant Kellogg repudiated the partnership, and retained all profits for himself, and even attempted to put the transaction through in the name of his daughter in order to evade liability. He may possibly have to liquidate some of his "paper" to pay the judgment, but that is no hardship compared to the situation of plaintiff if this argument is to prevail. The latter would have to wait, possibly years, to secure his profit, if no payments were legally due until this "paper" matured. It is true, as appellant Kellogg states, that "as a general

rule a personal judgment cannot be rendered against one of the partners until the partnership property has been converted to cash". (47 C. J., p. 1266.) But the "paper" mentioned is the personal property of Kellogg, and not partnership property. The partnership was formed for the buying and selling of real property, and Kellogg was to furnish the capital. The transaction in buying and selling was a partnership affair, and any profits arising therefrom were to be equally divided. The rule does not apply, because not .only was the equivalent of cash received by Kellogg, but because there was no partnership property to liquidate.

■ Interest upon the amount found due was properly allowed, as the money was not turned over to plaintiff at the time it should have been paid, and consequently the withholding was wrongful. (33 C. J., p. 203.)

Other questions are raised by appellant, but they do not merit extended discussion.

■ Taking up the appeal of plaintiff Watson, he complains because the court did not order a dissolution of the partnership. In his complaint he charged that two other lots, Nos. 44 and 45, were acquired by the partnership, and now stand in the name of Florence Scripps Kellogg. He asked that she be declared to hold said property in trust for him. The court found that these lots were never partnership property, and that they had not been sold or turned into profits. The evidence supports this finding. The court also found that these lots were purchased pursuant to the partnership agreement, and the evidence supports this view. We believe that the trial court acted properly in refusing to dissolve the partnership. When these lots are sold, a further accounting may be had. The partnership should be held open until such time. We cannot see that any prejudice has resulted to plaintiff through the failure of the court to order a dissolution. In fact, it would appear that such action would benefit plaintiff. Furthermore, this being a partnership where "no definite term or particular undertaking is specified", it can be dissolved at any time by the express will of either partner. (Civ. Code, sec. 2425, subd. [b].)

■ Plaintiff complains of the action of the court in failing to give him any relief in respect to lot 44 and the south half of lot 45. It must be remembered that this action is

for an accounting, and as these lots had not been sold there were no profits from this transaction. It may be true that defendant can hold these lots indefinitely, but this contingency cannot affect the situation. If the action were for damages occasioned by a conspiracy between Kellogg and his daughter, some other character of relief might be available. (47 C. J., p. 811, par. 261.) The title to these lots was taken in the name of the daughter, and the court found that Kellogg proposed to erect a building thereon to house a newspaper published by a corporation in which he was the principal stockholder. From the findings of the trial court the conclusion may be readily drawn that Kellogg was again using his daughter as a sham to evade paying plaintiff what was justly due him for his efforts in assisting Kellogg in acquiring the property. No cause of action predicated upon such facts is set forth by plaintiff.

The trial court properly held that plaintiff had no right, title or interest in lot 44 and the south half of lot 45. Under the partnership agreement Kellogg was to pay for any property acquired. The partnership was only interested in any profits made from a resale thereof. The land acquired was not the property of the partnership, but the individual property of Kellogg, and the finding of the court which we have quoted, establishing the partnership, should be so construed.

Appellant Watson, at the conclusion of his brief, requests this court to take additional testimony, under section 956a of the Code of Civil Procedure. Relief under this section can only be secured through a motion made pursuant to Rule XXXVIII of the Rules for the Supreme Court and the District Courts of Appeal. The request must be denied.

Other points raised by appellant Watson have been considered. Most of them have been disposed of in the consideration of other questions, and the remainder are without merit.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.