[Civ. No. 8142.   Third Dist.   Oct. 22, 1952.]

W. P. VIERRA, Appellant, v. C. R. SHAFFER et al., Respondents.

Rodin & Nelson and George G. Murry for Appellant.

Landra & Silveira for Respondents.

VAN DYKE, J.—This is an appeal from a judgment rendered in an action brought for declaratory relief wherein the parties to a lease sought a decree of the court determining their rights and liabilities thereunder in respect of certain matters that were in dispute between them. The lease in question was for a term of five years and the subject matter was a dairy ranch belonging to respondents, lessors. The lessee was in possession of the ranch under an existing lease when the subject lease was made. A dairy was being run by him producing what was then known as Grade B milk. The parties contemplated improvements to be made by the lessors in the dairy plant and equipment so that Grade A milk could be produced. Coincident with the execution of the lease such improvements were made and during the term of the lease Grade A milk was produced. As to the rental the lease contained these provisions:

"As and for the rental of the said premises during the said term, Lessee shall and hereby agrees to deliver, each and every day during and throughout the term hereof, to such creamery or creameries as may be selected by Lessee, in the name of Lessors, and with directions to said creamery or creameries to pay the proceeds thereof directly to Lessors, 25 pounds of Grade A butter fat. Lessee agrees to assign, and this agreement shall constitute an assignment *pro tanto* to Lessors of the dairy products produced upon the premises and the proceeds thereof to the extent of 25 pounds of Grade A butter fat per day. Should Lessee be unable to or fail to produce upon the premises 25 pounds of Grade A butter fat daily, then Lessee shall pay to Lessors an amount equal to the difference between the current market price of 25 pounds of Grade A butter fat, and the quantity thereof actually produced and delivered in the name of Lessors, it being the intent and purpose of this agreement and the understanding of the

parties that Lessors shall receive as rental for the premises a daily rental equal to the current market price of 25 pounds of Grade A butter fat delivered to the creamery or creameries selected by Lessee.''

The parties are in agreement that in one respect the lease as written did not properly reflect the intent of the parties. It stated that the lessee should deliver to the creamery each day in the name of the lessors "25 pounds of Grade A butter fat" and throughout the above quoted portion of the lease it is to be noted that the reference is constantly to "25 pounds of Grade A butter fat." It is conceded by all that the reference should have been to the delivery of an amount of Grade A milk that contained 25 pounds of butterfat. At all times after the lease went into effect the lessee has delivered to the accepted creamery the required amount of milk containing the necessary amount of butterfat. The issue between the parties as to their rights and obligations under the lease did not arise until when, during the term of the lease, the Agricultural Code was changed so that the existing designations of Grade A and Grade B milk were abandoned and the term "market milk" adopted in lieu of the term "Grade A milk." What had been Grade B milk was designated as "Industrial milk." Regulations concerning pricing of market milk set up three classifications within the general designation of market milk and they were called "Class 1," "Class 2" and "Class 3." Theoretically, at least, there were gradations of price among these classes. When these statutory and regulatory provisions took effect the parties to the subject lease for some time went along as they had been doing, the price paid by the creamery to the lessors for the "market milk" delivered to the creamery for them by the lessee being arrived at by the creamery by a method which amounted to an average of the theoretical price for each of the three classifications mentioned. The same price was paid to the lessee for the milk he delivered over and above the deliveries necessary to fulfill his obligations to the lessors. But before this action was begun the lessors made a demand upon him which embraced a claim that there was on his part a duty to pay or cause to be paid to them for their 25 pounds of butterfat per day the so-called "Class 1 price." Thereupon appellant brought this action herein. ██ The trial court found that the lessors should receive as rental for the dairy "daily a sum of money representing the top or highest price paid by any creamery to which milk from said leased prem-

ises should be delivered for a quantity of milk that would produce, or contain, 25 pounds of butterfat per day, said milk to be produced under conditions necessary to produce milk known as Grade A milk as of the time of the execution of said agreement and said milk to be delivered to said creamery by lessee in the name of lessors with instructions to pay said moneys directly to said lessors." The trial court further found, "That the value of 25 pounds of butter fat per day from September 16, 1949 [the date when the changed designations as to what had been Grade A and Grade B milk went into effect] to December 1, 1950 at the Grade 1 price paid by Avoset [the accepted creamery] during said period is the sum of $11,317.91; that during said period said Avoset company paid to defendants for account of plaintiff the sum of $9,710.80 leaving a balance of $1607.11 unpaid from plaintiff to defendant on account of rent payable from September 15, 1949 to December 1, 1950." The court rendered judgment in favor of the lessors, construing the lease as stated in the above quoted findings and giving them a money judgment against the lessee in the indicated amount. From this judgment this appeal has been taken.

We think the judgment in both its aspects is without support in the evidence. Granting that in the specific reference to a delivery of butterfat per day the lease did not truly reflect the intent of the parties and the trial court upon that minor point concerning which there had been no dispute did declare the true intent of the parties, nevertheless when the court made the findings quoted above, which construed the lease as requiring a money payment of rental by the lessee, it violated the plain and unambiguous provisions of the lease so that the rental provisions became something entirely different from those stated in the instrument executed by the parties. We have heretofore quoted these rental provisions and will not repeat them here. Suffice it to say that the obligation of the lessee in respect of rental payment was clearly stated to be and must continue to be an obligation, not to pay money nor to be responsible for a price, but to deliver to the lessors, by delivery to the selected creamery, of a quantity of milk which contained 25 pounds of butterfat. When that delivery had been made the daily obligation of the tenant to pay rent was completely discharged. The only circumstances under which he could become liable for any money payments whatever were clearly stated in the lease

to be dependent upon his failure to deliver a sufficient quantity of milk containing a sufficient poundage of butterfat. In that event, and in that event only, was he to pay any money to the lessors. That event, according to the undisputed testimony, never happened. We think the foregoing is made manifest by simply reading the pertinent provisions of the lease. The obligation to deliver is clearly stated and what is to be delivered is equally clear. Equally clear was the intent that this delivery should acquit the lessee of any further rental obligation. All of the terms concerning rental support this conclusion. They are, first, the specific requirement that the delivery of milk be made ''as and for rental''; further, the lessee by the lease assigned *pro tanto* to the lessors a sufficient amount of the daily production to fulfill the rental requirements. When the delivery had been made in the name of the lessors, the receiving creamery was to be directed to pay the lessors directly for the same. In addition, and up until the changes in the law and regulations, the parties interpreted the lease by their acts and conduct in accordance with the foregoing. No difference of opinion arose as to the meaning of the lease or as to the extent and nature of the obligations of the tenant thereunder until the statutory and regulatory changes took place. These changes could not change the meaning of the lease as written.

Although the trial court took evidence as to the circumstances attending the execution of the lease and the negotiations leading thereto, including testimony of the conversations between the parties, yet nothing so appearing either tended to or could vary or change the clear provisions of this lease. The following quotation from 12 American Jurisprudence, page 749, is pertinent:

''Interpretation of an agreement does not include its modification or the creation of a new or different one. A court is not at liberty to revise an agreement while professing to construe it. Nor does it have the right to make a contract for the parties—that is, a contract different from that actually entered into by them. Neither abstract justice nor the rule of liberal construction, justifies the creation of a contract for the parties which they did not make themselves or the imposition upon one party to a contract of an obligation not assumed.''

Under the terms of this lease no occasion has yet arisen when the lessors could make any money demand whatever against the lessee nor according to all of the evidence

has any situation arisen when they could have claimed that the tenant had in any way failed to perform his obligations. When he had made the required deliveries in the required manner he was acquitted of his rental obligation. If the lessors contended either before or after the changes in the law and regulations that they were not receiving from the creamery a proper payment for their butterfat their quarrel was with the creamery and not with their tenant.

The judgment appealed from is reversed.

Peek, J., and Schottky, J. pro tem., concurred.