[Civ. No. 17717. First Dist., Div. One. June 17, 1959.]

ARTHUR H. LUCHS, Respondent, v. ARWIN E. ORMSBY, Appellant.

Koford, MacLeod & Koford for Appellant.

Clark, Heafey & Martin, Edwin A. Heafey and Richard P. Lyons for Respondent.

BRAY, P. J.—In an action for dissolution of a partnership and for an accounting, plaintiff was awarded judgment against defendant for $47,371.93. Defendant appeals.

### QUESTIONS PRESENTED

1. Adequacy of the accounting.

2. Sufficiency of the evidence to support the findings:

(a) that Blue Heron Crane Company* was solely owned by defendant;

(b) that Company should receive $4.50 per hour for labor performed on subcontracts received from Blue Heron Cranes, Limited;†

(c) that certain expenditures charged against Limited were properly those of Company;

(d) that defendant appropriated to his own use $17,306.25 of Limited's moneys;

(e) that $11,900 discount moneys were kept by defendant;

(f) that defendant wrongfully paid his wife $5000 in partnership money;

(g) that defendant wrongfully expropriated partnership funds by way of rentals;

*Hereinafter called "Company."
†Hereinafter called "Limited."

(h) that defendant expropriated $420 as interest charge;

(i) that plaintiff had not overdrawn and is entitled to half of moneys expropriated by defendant and to interest thereon.

3. Did the court err in imposing costs and fees of receiver on defendant?

## FACTS

In August of 1950, plaintiff and defendant formed a partnership under the name of Blue Heron Cranes, *Limited,* pursuant to an oral agreement for the purpose of fulfilling government contracts for certain forged metal items. The business of the partnership, Blue Heron Cranes, *Limited,* was conducted in Oakland, California, on the premises of another company, called Blue Heron Crane *Company.* The defendant was found to be the sole owner of Blue Heron Crane *Company,* although at the trial it appeared that there was some sort of "family partnership" in *Company* between defendant, his wife and children. It should be noted that the firm named Blue Heron Cranes, *Limited,* is the partnership between plaintiff and defendant under consideration on this appeal, whereas the firm named Blue Heron Crane *Company* is the firm which defendant either completely owned or completely controlled.

On May 27, 1952, the oral partnership between defendant and plaintiff was formalized by a writing, which was retroactive to January 1, 1952.

The partnership shared the offices, salaries and expenses with defendant's company, including the salaries of the defendant's sisters who worked in defendant's company's office shared by the partnership. The *company* did much of the work for the *partnership,* on a subcontract basis, but the terms of the agreement for compensation were in dispute.

Defendant, during 1950 and 1951, was the principal manager of the partnership, plaintiff being employed full time as vice president of another firm in South San Francisco. In about March of 1952, plaintiff resigned his position with the South San Francisco firm, and spent about half his time on partnership business, where he had a desk "for a few hours" which he occupied every day or every other day, where he remained until sometime in the spring of 1953.

The bookkeeping of the partnership was done by a firm called the "Accounting Car Bookkeeping Service" and more particularly by one Givich, a member of that firm. This accountant could only make entries in the firm's books as they

were reflected by the firm's transactions; since many of the transactions were not reflected Givich was asked by defendant on December 22, 1953, to include certain transactions on the partnership books and on defendant's personal income tax, which were not shown by any records of Company. (This request led to Givich's quitting the job.) Because of this sort of thing the accountants who prepared the tentative account for the receiver in this action stated in their cover letter: "The bookkeeping was quite inadequate for the operations involved and in some cases entries were made on the books which were contrary to fact."

On April 29, 1953, plaintiff sent defendant a letter notifying him that the plaintiff wished to dissolve the partnership within the 60-day period as provided by the written agreement. The winding-up process continued through November of 1953. Plaintiff became suspicious that the defendant had been defrauding him and withdrew $9,500 as his half share of the partnership assets, at which time he also sent a letter to defendant informing him of his purpose in so doing. When the parties could not agree to a settlement of accounts, this litigation followed.

1. *Was the Tentative Accounting Prepared for the Trial Herein by Arrangement of the Receiver Adequate, or if Inadequate, Was It Acquiesced In by the Defendant and His Trial Counsel?*

Defendant throughout his brief appears to be attacking the tentative accounting made by D. A. Sargent and Company at the request of the receiver, Charles R. Ringo. Defendant lays much stress on the fact that it was a "tentative accounting." It would seem that it was "tentative" only in the sense that it depended upon final determination of the assets in the possession of the partnership and the findings of the trial court.

The receiver's accountants stated that "It apparently would be possible to make a complete accounting for the Blue Heron Crane, Ltd., *if at all, only* by examining the personal *records of the two partners and the records of the other companies in which they have interests.*" (Emphasis added.) Defendant refused to make Company's books available to the accountants.

Another reason why the accounting was not as it might have been was the slipshod manner in which the books of the partnership were kept. "The records made available to us for examination were incomplete. Many of the partnership's

transactions indicated by the records were not accounted for on the books. The bookkeeping was quite inadequate for the operations involved and in some cases entries were made on the books which were contrary to fact.'' The defendant would appear to have no one but himself to blame for the inadequacy of the books, since defendant was certainly the principal manager of the partnership's affairs. This is apparent from the fact that the partnership's business was carried on from the defendant's business premises, the books of the partnership were kept in Company's office, and the accountants for the partnership were hired by defendant and were the same as those employed for Company.

Defendant stated at the trial that he would accept the accountants' report and their integrity. Defendant's counsel stated in his trial brief that the receiver and his accountants did a ''splendid and impartial job.''

The accounting report appears to be as complete as possible under the circumstances. Any incompleteness was either through the negligence of the keeping of slipshod partnership books, or through defendant's refusal to have his ''other businesses'' looked into. It does not appear that a better job could possibly have been done under these circumstances even with the use of a referee.

In his contention that the accounting was inadequate defendant has cited cases such as *Mosher* v. *Helfend,* 7 Cal.App. 2d 48 [44 P.2d 1050], and *Sausser* v. *Barrack,* 123 Cal.App. 2d Supp. 948 [266 P.2d 231], which hold in effect that a personal judgment cannot be rendered against a partner for unliquidated claims without a full accounting. Here, as full an accounting was had as the circumstances and the position taken by defendant would permit. Moreover, defendant acquiesced in the account as presented. The trial court here followed the procedure set forth in *Steinberg* v. *Goldstein,* 129 Cal.App.2d 682 [278 P.2d 22], in that after a trial, it rendered its interlocutory decree subject to the final accounting and sale of the partnership assets. After receiving the final account and after all the assets had been converted into cash, it rendered its decree after plaintiff had waived his rights to certain undetermined items held by the receiver.

2. *Sufficiency of Evidence.*

(a) Blue Heron Crane Company.

The court found that Company was solely owned by defendant. Defendant testified that it was a family partner-

ship owned by his wife, his seven children and himself. Plaintiff testified that defendant told him that defendant was the owner. Moreover, defendant was the sole manager and it clearly appears that Company was completely in his control. The trier of the fact had the right to choose between defendant's statement and that of plaintiff backed up by defendant's complete control. Whether Company was "solely owned" or "solely controlled" would make no difference in the determination of this case.

(b) Subcontracts.

█ The court found that it was orally agreed that, for labor performed by Company on subcontracts received from Limited, Company would bear the cost of the overhead. Defendant contends that the agreement found by the court was not that testified to by either party. There was considerable conflict between the parties. Plaintiff testified that a temporary rate of $4.50 per man per hour was agreed to be paid Company but that it was to be in effect only temporarily until the costs could be determined so that a basic rate of cost plus ten per cent arrangement could be worked out. Defendant on the other hand vehemently insisted that the rate was $4.50 per hour, although later he contended that Limited was to bear the cost of the overhead. Introduced in evidence by defendant was a writing by plaintiff which indicates that the agreement was as found by the court. Plaintiff, however, while admitting making the writing, claimed that it was not meant as an agreement but merely as a "conversational note." Of course, the trial court could not create a new agreement for the parties. (See *Vierra* v. *Shaffer*, 113 Cal.App.2d 768, 772 [248 P.2d 992].) However, it did not do so. In the light of the conflicting evidence the court's conclusion as to what the parties agreed, is supported.

(c) Company expenditures were charged against Limited.

█ The court found that expenditures totaling $34,974 charged to Limited by defendant were properly charged against Company. Defendant's contention that they were Limited's obligation is based primarily upon his contention that on the subcontract work Limited was to pay the overhead. As we have pointed out, the trial court's finding that this was not the agreement is supported; therefore, the court was correct in charging these expenses to defendant. This finding is based on some 291 checks drawn by either defendant or his

sisters on Limited's bank account in order to pay Company's expenses.

The trial was recessed for briefing. Thereafter, in open court, plaintiff's counsel stated that his brief itemized these checks and that defendant's counsel was "willing to stipulate with us that the checks itemized in our brief . . . are in custody of the Receiver and that they may be referred to by the Court if the Court seeks to check further than our briefs." Defendant's counsel so stipulated. Thus, no attack was made upon the correctness of the itemizations as they appear in plaintiff's brief. He now attacks their correctness by attempting to show discrepancies between the itemizations in the brief and the invoices in payment of which the various checks were issued. In view of the stipulation it is too late to do that.

Moreover, the so-called discrepancies in most instances would not change the situation as, if defendant's version of the items is correct, they would still be chargeable to overhead; for example, one item shows payment for a "welding rod" and defendant claims it was "payment on rental purchase plan of a portable welder." Another shows a mistake in the correct number of a check; another shows an expenditure for "shipping labels and packing envelopes" instead of "purchase orders, envelopes and invoices." Included are various items of fuel expense which defendant claims plaintiff agreed that Limited should pay. Plaintiff denied such an agreement, and the court believed plaintiff. Defendant claims that the fact that plaintiff O.K.'d many of the items shows that they were to be charged to Limited. Plaintiff testified that he O.K.'d them for later adjustment and that as to one transaction his O.K. was inadvertent. Again, the effect of plaintiff's action in this respect was a matter for the trial court to weigh in connection with the other circumstances.

(d) Defendant appropriated to his own use $17,306.25.

The court found that that sum was properly moneys of Limited. Some of the items making up this amount were shown by checks admittedly cashed by defendant. As to them and all the other items, some of the items were not shown on the partnership books. As to all of them defendant claimed their amounts had been divided between himself and plaintiff. Plaintiff denied ever receiving any portion of them. There was clearly a conflict in the evidence which the court re-

solved. Defendant contends that plaintiff's testimony concerning these amounts is unbelievable. It appears that it is just as believable as is defendant's, who admittedly cashed the various checks. There were numerous cash transactions between the partners which did not go through the partnership accounts. In many of these defendant deposited the proceeds in his personal account, writing plaintiff a personal check for half the amount. Plaintiff acknowledged receipt of these checks. Defendant had no check stubs or cancelled checks for the other amounts. Plaintiff denied defendant's claim that some of the divisions of money were made in cash. It was the duty of the trial court to resolve these conflicts and it did. For computing interest the court took the dates on the various checks cashed by defendant.

(e) Discount moneys.

The court found that defendant wrongfully expropriated $11,900 representing payment of discount moneys by Womack for the performance of partnership subcontract work. Womack was hired by the partnership to do some subcontracting work for it for which he received $42,134.52. He agreed with *Company* to pay the latter a certain fee for the use of *Company's* premises. The total amount paid by Womack under the agreement was $11,900. When plaintiff inadvertently happened upon this agreement (defendant did not tell him of it), defendant told him that it was defendant's personal business and none of plaintiff's. The agreement stated that the payment was ''to offset the cost of furnishing covered space, electricity, and other shop facilities supplied . . .'' Plaintiff testified that $75 per month would have been a reasonable value for the space and facilities provided, and that it would have given Company a reasonable profit. Womack worked on Company's premises for 16 or 17 months which would have amounted to a total reasonable charge of $1200-$1275 instead of the $11,900 defendant received. The cost of Womack's services to the partnership would have been considerably diminished without this apparent kick-back to defendant. The court was justified in so finding and holding that the agreement amounted to an expropriation by defendant of partnership money.

(f) Payment to defendant's wife.

The court found that defendant wrongfully paid to his wife $5,000 of partnership money. Defendant admitted paying this sum to her and she admitted receiving it. How-

ever, both contended that it was in consideration of her signing a continuing guaranty arrangement so that the partnership could borrow money from the bank. Defendant at first denied knowledge of the agreement with the wife. Plaintiff testified that he had objected to any payment being made to her. The bank's representaitve testified that the only reason her signature was required was because of her community interest in her husband's property. Plaintiff O.K.'d one of the invoices involved in this transaction, but testified that he did it inadvertently. It cannot be said that the trial court did not have substantial evidence upon which to base the finding that the payment of partnership funds to defendant's wife was unlawful.

(g) Rentals.

■ The court found that defendant improperly charged rentals of $2,400 against the partnership. Defendant admitted making this charge but claimed that there had been an agreement, since so much of the partnership "stuff" was in Company's plant, that extra rent was necessary. Plaintiff denied that there was any such agreement. Further, defendant's bookkeeper had no recollection of any such agreement and stated that if there had been it would have been reflected in the books. Obviously the trial court's resolving of this conflict was supported.

(h) Interest charge.

■ The court found that defendant improperly charged $420 for interest on partnership capital contributions. ■ A partner is not entitled in the absence of a special agreement among the partners to interest on his capital contribution. (38 Cal.Jur.2d p. 134, § 161.) ■ Defendant claimed an oral agreement with plaintiff. Plaintiff denied there was such agreement. The trial court resolved the conflict.

(i) Plaintiff did not overdraw and is entitled to half of moneys expropriated by defendant and to interest thereon.

■ The court so found. The withdrawal of $8,000 by plaintiff does not come close to his share of the amounts found to be expropriated by defendant and to which the court held that he was entitled. Normally interest is not allowable on an unliquidated claim until the claim has been reduced to judgment. (*Cox* v. *McLaughlin,* 76 Cal. 60, 67, 72 [18 P. 100, 9 Am.St.Rep. 164].) However, Civil Code, section 3287 provides: "Every person who is entitled to recover damages certain, *or capable of being made certain by calculation,* and

the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . ." (Emphasis added.) A partner may collect interest where partnership funds have been wrongfully withheld or where a partner in charge of firm books wrongfully makes an overdraft. (38 Cal.Jur.2d 136-137, § 162; *Forsyth* v. *Butler*, 152 Cal. 396 [93 P. 90]; *Watson* v. *Kellogg*, 129 Cal.App. 592, 599 [19 P.2d 253].)

In *Bowman* v. *Carroll*, 120 Cal.App. 309, 312-313 [7 P.2d 734], the court reiterated the general rule that interest is generally not allowable on unascertained balances remaining in one partner's hands after dissolution. But the court applied the qualification to the rule that where equitable circumstances warrant, interest will be allowed from the time of settlement of the partnership accounts. The court upheld the allowance of interest from the time of the filing of the complaint by the plaintiff. The court, however, in *Freese* v. *Smith*, 114 Cal.App. 2d 283 [250 P.2d 261], held that the allowance of interest by the trial court was error where none of the factors of the Bowman case was present, viz., where the defendant sold partnership assets and kept proceeds, where she denied the existence of the partnership, where she prolonged litigation, and where she altered book entries which had admitted the plaintiff's partnership interest. More recently in *Speka* v. *Speka*, 124 Cal.App.2d 181 [268 P.2d 129], the court after citing the above authorities, states (p. 187) : "In the instant case the amount owing by appellant was undetermined at the termination of the partnership. But in view of the conduct of appellant, it cannot be said that the trial court abused its discretion in penalizing him with interest from the date of the dissolution of the partnership."

 Defendant seeks to distinguish these cases by showing that in the present case the defendant was not guilty of any extremely inequitable conduct. If the wrongful diverting, expropriation, and receiving, to himself, of partnership moneys, is not extremely inequitable conduct, it is difficult to picture what would be. The defendant also claims that the affairs of the partnership were in such a terrible state that they required a judicial decision based on a lengthy accountant's report to ascertain with any certainty the respective rights of the parties. The defendant has no one to blame but himself for the slipshod manner in which the partnership accounts were kept.

The trial court did not set any arbitrary dates from which

interest was to start running. Where the dates of the transactions were calculated and ascertained, interest was allowed from such dates. Where the specific dates were not ascertained, interest was allowed from the last day of the year in which the transaction was found to have occurred. The trial court properly allowed interest within the terms of Civil Code, section 3287.

3. *Receiver's Costs, Fees and Expenses.*

■ The rule is that the assessment thereof is within the sound discretion of the trial court (*Owen* v. *Cohen*, 19 Cal.2d 147, 155 [119 P.2d 713] ; *Stanton* v. *Pratt*, 18 Cal.2d 599, 602-603 [116 P.2d 609] ; *Baldwin* v. *Baldwin*, 82 Cal.App.2d 851, 856 [187 P.2d 429] ), and the assessment imposed on the party whose conduct made the appointment of a receiver necessary is proper (68 C.J.S. p. 1003). In this respect it cannot be said that the trial court would have abused its discretion in assessing defendant with the entire expense of the receiver.

■ However, it appears in this action that the trial court did not assess the defendant with the entire costs. By its judgment of October 18, 1956, amending *nunc pro tunc* the judgment of September 14, 1956, the trial court found that the total amount paid to the receiver was $4,759.16 as of January 2, 1955. In addition the receiver was entitled to an additional fee of $887.65 for its services as respects the final accounting. The total amount of receiver's fees either paid or owing was $5,646.81. Half this total, or $2,823.40, was taxed to the defendant. Thus the defendant in fact was only taxed for half of the receiver's fees. There was no error in making such amendment. The amending judgment stated that in the original judgment there were certain clerical mistakes consisting of clerical errors and omissions. The trial court has the power to amend or correct its judgments because of clerical errors. (Code Civ. Proc., § 473; *Nacht* v. *Nacht*, 167 Cal.App. 2d 254, 262 [334 P.2d 275].) The correction made by the trial court was in effect the correction of the amount of fees taxed to defendant, and the correction inured to defendant's benefit, since he was taxed with only half rather than the entire amount of the receiver's fees, even though the amount previously calculated as the entire fees was less than half the entire amount under the amended judgment. There was no error in the court's action in correcting the judgment nor in taxing defendant with one-half of the receiver's fees and expenses.

The record shows that the trial court, the receiver and the accountants working for the receiver were confronted with a very confused state of affairs as respects the partnership and defendant's other business, due primarily to the manner in which the books were kept under defendant's direction. The trial court solved this confusion as best it could, and its action is as well supported as was possible under the circumstances.

There was no abuse of discretion in the denial of defendant's motion for new trial. The alleged newly discovered evidence would have been cumulative only. "Under such circumstances much must be left to the discretion of the judge who tried the case. He is the best judge as to whether or not the proffered testimony, had it been received, would have changed the decision, and as to whether or not had a new trial been granted, its receipt would probably result in a different termination of the litigation." (*Singh* v. *Banes,* 129 Cal.App.2d 395, 402-403.)

Defendant's petition that this court receive new evidence is denied. (See *Estate of Schluttig,* 36 Cal.2d 416 [224 P.2d 695]; *Bauer* v. *Bauer,* 38 Cal.App.2d 309, 317 [100 P.2d 1070, 101 P.2d 1117].)

The judgment is affirmed.

Wood (Fred B.), J., and Tobriner, J., concurred.

A petition for a rehearing was denied July 15, 1959, and the opinion was modified to read as printed above.