[Civ. No. 89. Fifth Dist. Mar. 12, 1963.]

EDWARD BURGE, Plaintiff and Appellant, v. CHARLES E. MICHAEL, Defendant and Respondent.

CHARLES E. MICHAEL, Plaintiff and Respondent, v. EDWARD BURGE, Defendant and Appellant.

(Consolidated Cases.)

Gant & Gant, James P. Mower and Badger & Mower for Appellant.

Robert R. Elledge for Respondent.

STONE, J.—The lower court consolidated *Burge* v. *Michael,* No. 56304, and *Michael* v. *Burge,* No. 59350, for trial. Since the cases are in no way related except that the people involved are the same, they must be treated as though separate appeals had been taken.

### *Burge* v. *Michael, No. 56304*

The business transactions involved in this case arose from the unusual circumstances of an accountant financing his client's drive-in restaurant venture. Like most unusual business arrangements which develop according to the exigencies of a touch-and-go business, the final settlement was made in court, and not without novel questions. Respondent had acted as appellant's accountant for some time before appellant started his drive-in restaurant business, for which respondent became the accountant. The financial condition of the business was precarious from the outset and to keep it operating, respondent personally guaranteed bank credits for appellant. He also advanced some cash, which advances were recorded in an open book account along with charges for services.

This arrangement, which began in 1947, was not initiated by an express agreement, and the best that can be said for it is that a debtor-creditor relationship arose which was evidenced by an open book account. On January 22, 1951, appellant asked for an advance of $1,000, and respondent requested a promissory note and a pledge of 180 shares of stock of Burge's Drive-In, Inc., to secure amounts owed at that time and for any future advances. According to respondent's book account, appellant then owed him $5,576.36, but the note was made for $10,000, payable one day after date and bearing interest at 6 per cent. The $10,000 figure was selected arbitrarily as an amount likely to cover future advances. The following endorsement was typed on the note:

"This note is secured by 180 shares common stock of Burge's Drive-In, Inc., left as collateral security for this note and for any future advances."

Appellant filed this action seeking to quiet title to the 180 shares of stock, and respondent filed a cross-complaint on the open book account. The trial was primarily an accounting procedure; the court entered judgment against appellant on his complaint to quiet title, and in favor of respondent on his cross-complaint.

Appellant first questions whether respondent was entitled to charge interest on the items of the open book account prior to

judgment, upon the theory the account was unsettled, that is, unliquidated. He cites the following authority:

"As a general rule interest is not allowed on running accounts as long as they remain open and unliquidated, unless there is some statutory provision that permits it, or some contract between the parties, express or implied, that interest shall be paid, or unless there is some custom or usage to that effect." (47 C.J.S., p. 26.) (See also *Arocena* v. *Sawyer*, 60 Cal.App. 581, 593 [213 P. 523]; *Continental Rubber Works* v. *Bernson*, 91 Cal.App. 636, 638 [267 P. 553].)

Appellant overlooks the promissory note of January 22, 1951, covering the amount then due, future advances, and interest at 6 per cent. The note evidenced whatever indebtedness was reflected by the books of account. It was therefore, in substance, an agreement to pay interest from that date on the open book account. Thus interest was properly chargeable from and after the date of the promissory note.

■ Appellant also makes objection to interest items of a different kind that arose in this manner: Respondent was occasionally forced to borrow money in order to advance cash to appellant to keep the business operating. Respondent charged interest he was required to pay, against appellant's account, in addition to the principal borrowed and advanced as cash.

Appellant argues that he is required to repay only the principal advanced to him, and that respondent must take the loss on the interest he paid the bank. We have been cited no precedent for either side of this question, although respondent argues that appellant brought this action in equity (to quiet title to his stock) and that equity vests the trial court with authority to do equity. From this he argues that appellant should pay respondent the interest paid to the bank. Aside from equity, we think logic and reason impel the conclusion that respondent, who had no proprietary interest in the business, should be reimbursed the out-of-pocket cost of advancing money for the use and benefit of appellant.

■ The next item disputed by appellant concerns interest on a $5,000 blocked savings account. Respondent guaranteed appellant's credit at a bank. The bank became uneasy and demanded that respondent deposit $5,000 in a blocked savings account, the bank having the right to draw on the money if necessary. No withdrawal was made by the bank, however, and the account was eventually unblocked, intact. During the period it was blocked, respondent charged appellant with interest on the $5,000 just as though appellant had

received the money, and he credited appellant with a $5,000 payment when the account was unblocked by the bank.

Respondent takes the position that he made an advance of the money held in the "blocked" account, but we believe that he acted as surety or guarantor in posting the money. The incidents of suretyship are found in Civil Code sections 2787, et seq., and the rights of a surety for reimbursement from his principal are specified in Civil Code section 2847, as follows: "If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses; . . . ."

The bank released the account intact, so there was no disbursement by respondent within the contemplation of Civil Code section 2847.

Unless the parties agree otherwise, a surety may sue only for reimbursement; he cannot recover interest on the surety deposit so long as it remains intact as a deposit only. (46 Cal.Jur.2d, Suretyship and Guaranty, § 82, p. 347.)

If we look upon respondent as a pledgor in depositing $5,000 in the blocked savings account, we arrive at the same result, since the law of suretyship applies to a pledgor. (1 Witkin, Summary of California Law, p. 652, and authorities cited therein.) Also, the money was in a savings account standing in respondent's name, and since there is nothing in the record to the contrary, we must assume that respondent received interest on the entire amount during the time the savings account was blocked.

Our conclusion that respondent was not entitled to treat the $5,000 blocked savings account as an advance of funds in the open book account, confronts us with a question concerning the status of the pledge of corporate stock. It arises in this manner: Appellant paid respondent $20,000 on April 5, 1951. If the $5,000 blocked account is debited as an advance, the open book account reflects a balance due respondent after payment of the $20,000. If the $5,000 item is deleted, the $20,000 payment satisfies the balance due as of April 5, 1951. The question as to the pledged stock arises because after April 5, 1951, respondent made additional advances of cash and rendered services to appellant, which were entered in the books of account. Appellant contends that the pledge of stock was not security for items entered after April 5, 1951, because the account was paid in full as of that date, which automatically extinguished the pledge.

It is true, as appellant points out, that satisfaction of the primary obligation extinguishes an accessory obligation (Civ. Code, § 2909; *Latta* v. *Tutton,* 122 Cal. 279, 283 [54 P. 844, 68 Am.St.Rep. 30]), but this rule of law serves only to point up the question whether here the primary obligation which the pledge secured was extinguished. ■ As we view the facts, the primary obligation of the pledge was to provide security for future advances pursuant to a continuing relationship. In the absence of an express tender of payment in full by appellant, or an agreement between the parties to terminate the relationship under which they were operating, the payment on account did not automatically terminate the pledge or security agreement. It appears that cash advances and service charges following April 5, 1951, were made pursuant to the original obligation evidenced by the pledge. The $20,000 payment was handled as simply another entry in the running account.

We find no authority based upon like facts, so we turn to other security transactions for guidance. For example, chattel mortgages frequently are written to secure future advances. A pledge to secure future advances presents a comparable situation. Civil Code section 2975 provides, in pertinent part:

"Repayment in full of amounts owing under a mortgage for future advances *does not extinguish the mortgage. Any such mortgage shall be discharged on demand of the mortgagor* in conformity with the provisions of Section 2941 of this code.

"As used in this section future advances include sums that may be advanced, expenditures that may be made, and indebtedness or obligations that may be incurred subsequent to the execution of the mortgage." (Italics added.)

We accept the precepts of section 2975 as controlling here. In this connection, appellant contends that he did demand return of his stock, and that he did give notice of termination of the pledge agreement. The court found against him on this issue, and since there is substantial evidence to support the view of the trial court, we will not set it aside. (*Butler* v. *Nepple,* 54 Cal.2d 589, 597 [6 Cal.Rptr. 767, 354 P.2d 239]; *Standard Realty & Dev. Co.* v. *Ferrera,* 151 Cal.App.2d 514, 515 [311 P.2d 855].)

Appellant next argues that the court erred in allowing items totaling $4,200, appearing in his own books, to be charged against him. The question presented is unusual in that these items, charged against appellant in his own records, do not appear in respondent's books. Furthermore, respondent could

neither explain why the items were not in his books nor authenticate the items in appellant's books. Appellant denied receiving the consideration represented by the items, particularly $1,161.75 for refrigeration equipment and $1,374.20 for meat, and contends these were "plug" entries to "write off" an overpayment at the time the $20,000 was paid on account. The question narrows to whether the trial court was justified in accepting the book records of appellant and rejecting his testimony as to these items.

Code of Civil Procedure section 1953f provides for the admissibility in evidence of business records. This section was amended in 1959 by the addition of section 1953f.5 to provide: "Subject to the conditions imposed by section 1953f open book accounts in ledgers, whether bound or unbound, shall be competent evidence."

Thus open book accounts and ledgers, whether bound or unbound, now come within the ambit of Uniform Business Records Act and must be considered as competent evidence under the provisions of Code of Civil Procedure sections 1953e-1953h. ▮ The purpose of the act, of course, was to liberalize the common law rule governing the use of business records as evidence. (*People* v. *Torres,* 201 Cal.App.2d 290, 296 [20 Cal.Rptr. 315].)

▮ The items reflected by a book account are prima facie evidence of the transactions recorded therein. (*Ducat* v. *Goldner,* 77 Cal.App.2d 332, 337 [175 P.2d 914].) ▮ The weight to be given a book entry as evidence is a question of fact for the jury (*Ducat* v. *Goldner, supra,* p. 338) or the trial court (*Yick Wo* v. *Underhill,* 5 Cal.App. 519, 521 [90 P. 967]; *Egan* v. *Bishop,* 8 Cal.App.2d 119, 123 [47 P.2d 500].) ▮ That the records were those of appellant rather than respondent is of no consequence, since an open book accounting may be predicated upon an account kept by either of the parties. (*Gardner* v. *Rutherford,* 57 Cal.App.2d 874, 884 [136 P.2d 48]; *H. S. Mann Corp.* v. *Moody,* 144 Cal.App.2d 310, 315 [301 P.2d 28].)

▮ Book entries when received in evidence may be accorded the same dignity as the testimony of a witness to the occurrences recorded in the entries. (*Maguire* v. *Cunningham,* 64 Cal.App. 536, 549 [222 P. 838].) ▮ In weighing the entries in appellant's books as against his testimony (18 Cal.Jur.2d, Evidence, § 13, p. 435), the trial court was entitled to take into consideration that appellant had used these same items as the basis for business expense deductions on his

business income tax returns. We cannot say that the trial court erred in allowing the items found in appellant's business records.

The matter is remanded to the trial court with directions to delete interest on the items of the open book account prior to the date of execution of the promissory note, January 22, 1951, and to delete interest charged for the $5,000 blocked account. As so modified, the judgment is affirmed. Each party to bear his own costs on appeal.

## *Michael* v. *Burge, No. 59350*

In 1951 respondent Michael and appellant Burge entered into a joint venture to engage in the farming business, and in 1952 they entered a second joint venture to raise cattle. In each instance a closed corporation was set up to carry out the purposes of the joint venture. Michael advanced considerably more cash to each business than did Burge. Most of the questions raised on this appeal turn on the nature of the advances.

 Michael filed a complaint on an open book account, simply alleging advances to Burge at his special instance and request. However, the findings as to the farming business recite:

"III That said agreement to share contributions, profits and losses equally was a joint venture agreement.

"IV That pursuant to said joint venture agreement Plaintiff Michael contributed Fifty Five Thousand Eighty Six and 75/100 Dollars ($55,086.75) and Defendant Burge contributed Thirty Six Thousand Seven Hundred Seventy Four and 62/100 Dollars ($36,774.62) ; that the Plaintiff Michael should be reimbursed Eight Thousand Seven Hundred Fifty Six and 06/100 Dollars ($8,756.06) from Defendant Burge for contributions in excess of his share."

Similar findings were made as to the cattle business. Therefore, even though Michael sued on an open book account, the questions on this appeal must be determined according to the undisputed findings that the parties were joint adventurers, and not according to the classic creditor-debtor relationship upon which the common count is founded.

 Appellant Burge argues that the action should be reversed on the ground that joint ventures are governed by the law of partnership, which requires a dissolution as a prerequisite to an accounting between the partners or, as here, the joint adventurers. Undoubtedly this is the general rule, but like most general rules it has its exceptions dependent upon the circumstances of the particular case. Here the parties

created a closed corporation to carry out the purposes of the farming venture, and a separate closed corporation to implement the cattle venture. The court found that as to each venture, the corporation had been discharged in bankruptcy. Thus there are no creditors to be considered and no assets to be marshaled, in short, nothing remains to be settled except an accounting between the two joint adventurers themselves.

These facts bring the case within the purview of *Elsbach* v. *Mulligan*, 58 Cal.App.2d 354 [136 P.2d 651], wherein the court said, at pages 368-9: "If a corporation or a formal partnership is a mere agency for the purpose of convenience in carrying out a joint venture agreement, and independent and innocent third parties, such as creditors or stockholders, are not injured thereby (which does not appear in the present case), justice would seem to demand that in determining the rights of the parties they be placed in the position each occupied under the original agreement."

Equally important is appellant's failure to raise the question of a dissolution below. The affairs of the joint venture covered by the accounting in the trial court began in 1951, many of the items were contested vigorously, an independent accountant was hired to audit the books of both businesses and of both parties, yet no protest was made by appellant. He participated in all of these proceedings and the trial without mentioning a dissolution. Nor did he contend in his briefs on appeal that a dissolution action is a prerequisite to an accounting. It was only after one of the members of this court inquired during oral argument whether there had been a dissolution and whether there were creditors, that appellant took up the issue. In *Elias* v. *Erwin*, 129 Cal.App.2d 313 [276 P.2d 848], the court said, at page 318:

"Under ordinary circumstances one joint adventurer may not sue his associate for the return of money contributed to the joint venture except by action for dissolution and an accounting. It is unnecessary to consider whether the facts of the present case bring it within an exception to the general rule. The point was not made in the court below and it is not urged on appeal."

However, appellant asked permission to file a supplemental brief, and permission was granted. We have considered the matter in the light of appellant's supplemental brief, and we are not convinced that his argument has merit. He simply makes a plea in abatement, making no assertion that there are creditors to be considered or that there are assets to be distributed, nor does he deny that the two businesses have

gone through bankruptcy, as was stated in oral argument and as is recited in the findings of the trial court. Should appellant prevail on this point, it would entail a retrial of the same evidence; he has not demonstrated that there would be any different result from the one to be deduced from the record before us.

Taking up appellant's argument on the merits, he first objects that respondent charged interest he paid to borrow money for contribution to the joint venture. It will be remembered that we determined similar interest was properly chargeable in the open book account action of *Burge* v. *Michael,* above. The two cases differ in this way: In *Burge* v. *Michael* respondent acquired no interest in appellant's business; he was simply financing Burge and was entitled to repayment of his out-of-pocket costs. In this case, respondent was a joint adventurer and he was making a contribution to the capital of the business.

Respondent cites cases which permit a joint adventurer or partner to recover interest paid by him for the benefit of the business. Those cases, however, involve either an assumption of a partnership obligation or a loan to retire a partnership obligation or a loan to the partnership with an express or implied agreement for the payment of interest. Here the court treated respondent's payments into the business as contributions to his share of capital, and found his total charges to be his gross contribution. The court then allowed him to recoup from Burge, his fellow joint adventurer, the amount that his contributions exceeded those of Burge. It was error to consider interest paid by respondent to borrow money to make a capital contribution to the joint venture, as an additional contribution to capital.

The next question is whether the court properly allowed respondent to recover interest on his excess contributions prior to an accounting. Michael testified that Burge told him that he, Burge, could not keep up his share of the expenses, but that he would "stand" his half of any money Michael put up. There was no evidence of an agreement that the excess, if any, was to bear interest prior to an accounting between the joint adventurers. The parties simply kept a running account of their transactions. It is important to keep in mind, also, that both joint adventurers were making contributions which were logged in the open book account.

A partner or joint adventurer is not entitled to interest on his capital contribution prior to an accounting unless it is expressly so agreed among the partners or joint adven-

turers. (*Luchs* v. *Ormsby,* 171 Cal.App.2d 377, 387 [340 P.2d 702]; *Clement* v. *Duncan,* 191 Cal. 209, 211 [215 P.1025]; *Bowman* v. *Carroll,* 120 Cal.App. 309, 312 [7 P.2d 734]; 38 Cal.Jur.2d, Partnership, § 161, p. 134.) It is provided in the California Uniform Partnership Act, found in Corporations Code section 15018, subdivision (d), that: ''A partner shall receive interest on the capital contributed by him only from the date when repayment should be made.''

Until there was an accounting, there was no way to determine Michael's overage so that Burge could pay the difference.

Appellant's final assignment of error concerns what appears to be a mathematical mistake, since the error is patent on the face of the record. An accountant audited the records of the parties and testified concerning his findings. It appeared that appellant's contributions to the two joint ventures totaled $36,774.62. However, another batch of vouchers was produced by appellant, which had not been seen by the accountant, nor had they been taken into consideration in arriving at Burge's $36,774.62 contribution. It was suggested that the court appoint the accountant as referee to examine the additional vouchers and determine which were valid claims and which should be disallowed. Counsel stipulated to the appointment and, further, that the referee should submit his findings in a letter to the trial court.

The referee filed his report, allowing vouchers totaling $2,615.63, and disallowing a total of $1,152.68. It is manifest that appellant should have been allowed $2,615.63 toward his total contributions, that is, this amount should have been added to $36,774.62. Instead, the court deducted the disallowed vouchers of $1,152.68. We assume this mistake was due to inadvertence, but in any event it was error in view of the stipulation. The error deprived appellant of an additional $3,768.31 in contributions.

The matter is remanded to the trial court with directions to delete from respondent's capital contribution items for interest charged by reason of money borrowed by him; to delete interest prior to date of judgment; to credit appellant with the additional sum of $2,615.63 allowed by the referee, and to credit appellant with $1,152.68 erroneously deducted from his total contributions.

As so modified, the judgment is affirmed. Each party shall bear his own costs on appeal.

Conley, P. J., and Brown (R.M.), J. concurred.