[Civ. No. 6776. Fourth Dist. Sept. 28, 1962.]

CONSTRUCTION MACHINERY CO., Plaintiff and Respondent, v. WILLARD & RODMAN, INC., et al., Defendants and Appellants.

Vernal G. Humpherys and Harold F. Pettee for Defendants and Appellants.

McInnis, Focht & Fitzgerald and William T. Fitzgerald for Plaintiff and Respondent.

SHEPARD, J.—This is an appeal by defendants from a judgment for plaintiff in the amount of $8,908.68 on account of alleged deficiency on a terminated conditional sale, and $2,919.01 on alleged open book account.

## FACTS: COUNTS ONE AND THREE

On July 19, 1959, plaintiff sold to defendant Willard & Rodman, Inc., a corporation doing business as Tri-City Construction Co., hereinafter called Willard, on a conditional sales contract, a self-propelled Heco truck crane with equipment, at the price of $24,648. Defendant Coast Photo Service, a corporation, hereinafter called Coast, guaranteed the buyer's performance of the contract. By the contract it was, *inter alia*, agreed that seller might, upon default by buyer, retake possession of the crane, retain all payments as partial compensation for its use and at any time after five days' notice to buyer of seller's intent to sell, seller might sell the crane either to others or itself, credit the net proceeds of such sale on the unpaid contract price and sue for the balance remaining unpaid. Buyer agreed to pay, as liquidated damages for breach of contract, whatever balance might then remain. (See note 1 below for exact wording of deficiency clause.[1])

On September 29, 1959, Willard, with plaintiff's written consent, transferred its interest in the crane contract to Empire Construction Co., a corporation, hereinafter called Empire. Empire assumed the obligation to make the payments on the contract but the transfer provided that Willard was not released in any way and that plaintiff might elect any remedy for breach, if payments on the contract were not made. Empire went into bankruptcy.

In January 1960, plaintiff repossessed the crane and equipment. On February 17, 1960, plaintiff filed its claim in Empire's bankruptcy for the sum of $924.35 for money owed on open account, but made no mention of a deficiency on the crane contract. Defendants asked plaintiff to retain possession

---

[1] ". . . and at any time not less than five (5) days after notice of intent to sell chattel shall have been mailed or delivered to the persons named in Item 10 above, chattel may be sold with or without further notice at private sale or at public sale, with or without having chattel at the sale, at which you or assigns may purchase, and the proceeds thereof, less expenses of retaking, repairing, holding, reselling and reasonable attorney's fees (15% of the unpaid balance if permitted by law), credited upon the amount unpaid and I or we will pay the balance forthwith as liquidated damages for the breach of this contract, any surplus, however, to be paid to me or us."

of the crane and to attempt to sell it. In trying to sell the crane for the account of defendants, plaintiff on one or two occasions sent the machine to a job location for demonstration and charged a rental in an attempt to partially defray the cost to plaintiff of the demonstration. Such charge was in accordance with plaintiff's established custom, but was not pursuant to any oral or written agreement with either the prospective buyer or any of these defendants. The rental received was recorded on plaintiff's books as plaintiff's income.

After making the original sales contract, plaintiff assigned its interest therein, with recourse, to C.I.T. Corporation. When the contract payments were defaulted, C.I.T. Corporation was, on its demand, repaid by plaintiff, and in March 1960 the contract was physically returned to plaintiff but no formal reassignment was executed in writing. Within ten days after such reassignment plaintiff registered the crane with the California Motor Vehicle Department, naming plaintiff as both registered and legal owner. At the time of retaking possession, plaintiff made an entry in its account books regarding said crane: "Loss on repossession...$8,908.68," which was computed by deducting the then estimated retail value (less 13 per cent cost of resale) from the total unpaid balance on the contract, service charges for hauling and repair of the crane while in plaintiff's possession were recorded on plaintiff's books as charged to plaintiff, and no ownership in defendants or charge against defendants was noted on plaintiff's books. Plaintiff did not make any written demand on defendants for delinquent payments and gave no written notice of repossession. Plaintiff did not give defendants any written notice of intention to resell for defendants' account.

Plaintiff's witnesses testified to conversations with defendants' representatives; that therein defendants were fully apprised of repossession, of defendants' legal liability for deficiency after sale, and defendants requested plaintiffs to sell or rent the crane. Testimony was further adduced to the effect that motor vehicle registration was necessary to facilitate resale and that the book entry of loss on repossession was done for tax purposes in case plaintiff was unable to recover the deficiency from defendants. At the time of trial the crane had not been resold by plaintiff. Plaintiff produced further testimony that the market for this type of crane was so depressed during the period of plaintiff's possession that any sale that could have been made would have been inequitable to defendants.

On March 24, 1961, the trial was completed and the cause submitted. On April 17, 1961, the trial judge filed a memorandum decision finding that plaintiff did repossess for the purpose of resale and to pursue its remedy against defendants for a deficiency; that no resale had been made; that plaintiff had, in good faith, attempted resale; that it was not fair to either party to compel a resale at a price below the reasonable value and that the rights of the parties would be best served by determining the reasonable value of the crane for the purpose of fixing the obligation of defendants to plaintiff for breach of contract. The court then, of its own motion, granted plaintiff leave to amend and allege reasonable value in keeping with the court finding. Such an amendment was filed in the form of a third cause of action, additional evidence was adduced as to the fair value of the crane and the court rendered judgment for plaintiff thereon in the amount of $8,908.68.

## The Pleading: Counts One and Three

The first cause of action pleaded the corporate existence of plaintiff, Willard and Coast, the guaranty of contract performance by Coast and Shores, the contract, delivery to defendant Willard, sale by Willard to Empire, Empire's default and bankruptcy, request for payment from Coast and Shores and their failure to pay. and balance due and owing. The prayer was for judgment for the full alleged balance of $25,408.68. The answer admits the contract, denies guaranty, denies debt and sets up special defenses of fraud, representations of release on transfer to Empire and no consideration. The same allegations of special defense are set forth more extensively by way of cross-complaint. The matters covered by special defense and cross-complaint are not the subject of points on this appeal and will not be further discussed. The pretrial order, respecting those matters in controversy on this appeal recites the issues, in essence, to be: (3) a determination of the rights and obligations of the parties under the conditional sales contract; (4) whether the circumstances of the retaking of the crane constituted a release of further obligation by defendants; (9) if plaintiff is entitled to recover, what is the amount. No objection or motion to amend the pretrial order was made. It was stipulated, at trial, that a judgment against any defendant would be entered against all, thus eliminating special problems of guaranty and *alter ego*.

The third cause of action, filed over objection of defendants some five weeks after completion of trial on the original complaint, repleads the essential charging portions of the first cause and adds that the crane was repossessed by plaintiffs; that attempts were made to sell it; that a fair price could not be obtained because of a depressed market; that no market at an equitable price is available; that defendants are indebted to plaintiffs for the difference between the fair market value and the balance of the purchase price; and ask judgment for that amount. By stipulation a general denial was deemed made. Under the issues presented by pretrial and by the parties during trial, we think this is not a new cause of action.

## ACTION FOR FULL PRICE

Defendants first contend that plaintiff's action for the full unpaid balance of the purchase price was an election by plaintiff to consider the contract an absolute sale, transferring full title to the crane to defendants. However, defendants do not point to any place in the trial transcript where this defense was ever presented to the trial court nor made an issue in the case. It is not referred to in the pretrial order as an issue. In fact, at the opening of the trial defense, counsel stated: "Our defense is the election primarily, the election of the plaintiff to treat this equipment as their own, which is inconsistent—" and at a later time said,

". . . And he [plaintiff] made an election by repossessing and by his acts of ownership over the Heco Crane and therefore waived his right to sue on the purchase price. The contract provides, however, under a repossession and a resale that they may bring an action for a deficiency. This is not an action for a deficiency of a sale.

". . . . . . . . . . .

"That is our defense to the first cause of action."

This defense was developed by evidence and argument as the case proceeded and we have searched the record without success for any contention to the trial court that plaintiff had elected to transfer complete title to defendants. Defendants have pointed to none. The entire trial was conducted on a different issue. Appellant cannot be allowed, on appeal, to press an entirely new theory completely foreign to the issues presented to the trial court. (*Ernst* v. *Searle*, 218 Cal. 233, 240 [7] [22 P.2d 715]; *City of Buena Park* v. *Boyar*, 186 Cal.App.2d 61, 66 [5a] [8 Cal.Rptr. 674]; *People* ex rel. *City*

*of Torrance* v. *City of Gardena,* 192 Cal.App.2d 686, 691 [1] [13 Cal.Rptr. 742].)

## ELECTION OF REMEDY

Defendants next contend that the evidence of plaintiff shows, without dispute, that plaintiff elected to repossess the crane and treat it as its own property; that it was an election of remedy and that plaintiff cannot now claim a deficiency. This contention was, of course, the primary theory of the defense throughout the trial and the one to which the bulk of the evidence and argument was addressed. There can be no question that the evidence was ample to support it. The only real question in this respect is whether or not the evidence was such as to compel this conclusion as a matter of law in relation first, to the motion for nonsuit, and second, on final judgment.

■ It is, of course, true that plaintiff's remedies, in the absence of contractual provision, were twofold. First, it could treat the sale as complete, rest title in the defendants and sue for the purchase price. Second, it might repossess, terminate the contract because of the breach, and retain the amounts paid and the crane itself. (*Johnson* v. *Kaeser,* 196 Cal. 686, 694 [2] [239 P. 324]; *Ghirardelli* v. *Peninsula Properties Co.,* 16 Cal.2d 494, 498 [2] [107 P.2d 41]; *Beaudry* v. *Peterson,* 50 Cal.App.2d 478, 482 [1] [123 P.2d 108, 124 P.2d 637]; *Sims* v. *Crowley,* 20 Cal.App.2d 598, 601 [2] [67 P.2d 745].)

■ In the case at bar a third remedy is afforded plaintiffs by the provisions of the contract itself. That remedy is that after five-day notice, mailed or delivered, of intent to sell, plaintiff could sell, apply the proceeds thereof to the unpaid balance, and sue defendants for the deficiency. This remedy is, of course, limited by the terms of the contract. (*James* v. *Allen,* 23 Cal.App.2d 205 [72 P.2d 570].) As was said in *Budget Finance Plan* v. *Sav-On Food Club,* 44 Cal.2d 565, 568 [2] [283 P.2d 694]: "Similarly here it is the contract between plaintiff and defendant . . . which must be looked to in deciding the remedies which plaintiff can pursue against defendant." See also *Ravizza* v. *Budd & Quinn, Inc.,* 19 Cal.2d 289, 293 [1] [120 P.2d 865]; *Goldberg* v. *List,* 11 Cal.2d 389, 394 [4] [79 P.2d 1087, 116 A.L.R.2d 900].

Here, the case was completely tried and submitted under a pleading that, if pursued to its ultimate, would have compelled the conclusion that plaintiff had .elected to pass title and hold defendants for the total balance of the purchase price. How-

ever, the pretrial order, not objected to, presented other issues and the trial court concluded that the plaintiff had, in truth, mistaken its remedy, had not intended to pass title, but had, instead, repossessed with intent to sell and hold the defendants for such deficiency as appeared after subtracting the amount of the sale proceeds. The court then proceeded to permit plaintiff to plead a third cause of action in accord with the trial court's conception of what the evidence showed, and to take evidence on the new cause of action. Had the point of election to transfer title and sue for the unpaid balance been originally urged, the trial court might well have found it difficult to avoid holding that plaintiff had elected to pass title and demand judgment for the total balance. But this was not the theory of the pretrial order or the theory on which either party or the court tried the case. Defendant simply contended that the actions of the plaintiff irrevocably showed an election to repossess for its own use, thereby terminating the contract and absolving defendants from further liability. Defendants' contention was that, under the evidence, plaintiff could not hope to recover on its first cause of action, as pleaded, since it had elected to repossess and sell. This the trial court recognized when it granted permission to amend to conform to proof. At all times defendants made appropriate objections. They moved for nonsuit at the close of plaintiff's case. They objected to the filing of the third cause of action.

No notice of intention to sell appears to have ever been given by plaintiff to defendants. The crane was never sold. The trial court cannot rewrite the contract.

"It is not the province of the court to alter a contract by construction, or to make a new contract for the parties, nor can the court rewrite the clear terms of a lawful contract." (*Nourse* v. *Kovacevich,* 42 Cal.App.2d 769, 772 [5] [109 P.2d 999].) See also *Vierra* v. *Shaffer,* 113 Cal.App.2d 768, 772 [2] [248 P.2d 992]; *Mills* v. *Vista Pools, Inc.,* 184 Cal.App.2d 668, 673 [6] [7 Cal.Rptr. 545]; *Piazzini* v. *Jessup,* 153 Cal. App.2d 58, 62 [6] [314 P.2d 196].

▮ Plaintiff contends that Civil Code sections 1783 or 1784 authorize a judgment for the difference between fair market value and balance unpaid. But those sections have no application. Under section 1783, paragraph (1) provides a straight action for purchase price. Paragraphs (2) and (3) and section 1784 relate to undelivered or rejected goods. Here the plaintiff pleads *delivery,* breach and *repossession,* and

there is nothing to the contrary. Plaintiff cites no authority for its position that section 1783 and section 1784 apply, and we have found none. Even assuming that section 1812.2 et seq. of the Civil Code were applicable, none of the provisions of those sections regarding notice of sale or sale were complied with.

Since the cause was not tried on the theory set forth in the first cause of action, and none of the evidence or arguments were addressed to that theory, the court was correct in rejecting it as a basis for judgment. The evidence was in conflict as to whether plaintiffs by their acts, were holding the property for resale at the oral request of defendants. Strong as the evidence was in support of defendants' theory, we cannot say as a matter of law that plaintiff's acts under the circumstances amounted to an election to repossess and relieve defendants of further obligation. The explanation of plaintiff's witnesses, although inconsistent in many respects with inferences based on admitted physical facts, nevertheless created a conflict.

However, the right to recover a deficiency depended on sale of the goods within a reasonable time. Under the facts, there could not be and there was not, any finding on such subject. No right to recover a deficiency under the sale terms of the contract had crystallized even at the time of trial. Under the contract, pleadings and the evidence, the court had no power to render a deficiency judgment against defendants.

## THE PLEADING: COUNT TWO

Plaintiff's second cause of action was on an open book account with Willard for $2,919.01 with demand for and refusal of payment. The answer was a general denial with a special defense that this open account related to the alleged misrepresentation of the condition of a Diesel tractor purchased by defendants from plaintiff.

## FACTS: COUNT TWO

Plaintiff sold to defendants a G.M.C. HD 19 used Diesel tractor. During use of the tractor by defendants, expensive repairs became necessary. Most of the repairs were done in plaintiff's shops on work orders from defendants. During trial the principal defense was that the tractor was not, at the time of sale, in as good working condition as plaintiff's salesman had represented it to be. There was some dispute as to whether the figures, in some cases, included proper

credits. All of these documents, as well as two accounting sheets that have the appearance of normal loose leaf ledger sheets from an account book were received in evidence without objection. Frequent references were made by the witnesses to the "book account." There is some indication that certain witnesses from time to time referred to some kind of book record present in the courtroom. Plaintiff's counsel asserted this during argument. The statement was not refuted. We cannot determine what books were in the courtroom. During the taking of evidence defense counsel at no time made any suggestion that the pages from the ledger book were not being presented. The whole burden of the questioning and arguments during presentation of evidence related to the propriety of the various charges, the correctness of some of the reconciliation figures transmitted between defendants' accountant and plaintiff's accountant, and questions relating to the condition of the tractor at time of sale. Even the disagreement between accountants was small. ■ On conflicting evidence all these matters were resolved against defendants. Under such conditions we cannot say that the trial court was not, as a matter of law, justified in the decision reached. Its conclusion, on conflicting evidence, is binding on this court on appeal. (*Brewer* v. *Simpson,* 53 Cal.2d 567, 583 [1-2] [2 Cal. Rptr. 609, 349 P.2d 289].)

The judgment for plaintiff on Count Two of the complaint, for $2,919.01, is affirmed. The judgment for plaintiff on Counts One and Three of plaintiff's complaint in the amount of $8,908.68 is reversed. Each party will bear his own costs on appeal.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied October 23, 1962.