**KIDDIE RIDES, INC., a Colorado corporation, Appellant,**

**v.**

**SOUTHLAND ENGINEERING, INC., a California corporation, Appellee.**

**No. 20300.**

United States Court of Appeals
Ninth Circuit.

May 16, 1966.

H. Weiser, Slavitt, Edelman & Weiser, Los Angeles, Cal., for appellant.

Abe Mutchnik, James C. Blackstock, Magdlen & Blackstock, Los Angeles, Cal., for appellee.

Before BARNES, HAMLIN, and ELY, Circuit Judges.

ELY, Circuit Judge:

This is an appeal from a judgment in a case involving the interpretation of a contract. The jurisdiction of the District Court rested upon the provisions of 28 U.S.C. § 1332 (1964), and that of our

court derives from 28 U.S.C. § 1291 (1964).

Appellee, Southland Engineering, Inc. is a California corporation engaged in the manufacture of children's mechanical rides. One of its products is an elaborate coin-in-the-slot horse ride called a Western Trails Traveling Pony. It is designed so that a youngster, after depositing a coin, may mount a saddled model of a pony and ride around a ten-foot oval track, behind corral-type fences, for a period of time. On December 27, 1960, Southland entered into a written agreement with Palomino Trails Co., a partnership, whereby Palomino acquired exclusive franchise rights to sell the ride in the states of Texas, Louisiana, Oklahoma and Arkansas. It was agreed that Palomino should pay to Southland $25,000 as deposit on the purchase of 100 units. The deposit was to be returned to Palomino by giving it credit at the rate of $250 per unit as delivered. Palomino sold only twenty units, and after allowing the agreed credits on these sales, the sum of $19,950 remained on deposit. (The extra fifty dollars credit is unexplained.)

In November of 1961 Palomino agreed in writing to surrender all its rights under the existing agreement to Kiddie Rides, Inc., a Colorado corporation and the appellant here. It was agreed that Kiddie Rides should pay $19,950 to Palomino, and Southland agreed that Palomino's remaining deposit of $19,950 would be transferred to the account of Kiddie Rides as a deposit.

A written agreement between Southland and Kiddie Rides, also dated in November, 1961, granted to Kiddie Rides an exclusive franchise and license to use, sell, and merchandise the horse ride in the states of Colorado, Wyoming, Montana, Utah, New Mexico, Arizona, Iowa, Kansas, Minnesota, Nebraska, North Dakota, South Dakota, Idaho, Illinois, Louisiana, Oklahoma, Arkansas, Missouri, Hawaii, and Texas. Kiddie Rides agreed that it would immediately take delivery of one hundred units and pay Southland for them. It did so.

The agreement further provided,

"4. The total purchase price for each Unit will be the sum of $1,450.00 F.O.B. any destination on an established truck route within the said Territory * * *. Southland hereby agrees that it will give Kiddie a credit of $250.00 per Unit on the first 80 Units (exclusive of the 100 Units heretofore ordered) sold under this Agreement, until the total sum of $19,950.00 has been credited to Kiddie. * * *

"5. Commencing January 1, 1962, Kiddie will place a firm order with Southland for not less than 25 Units for each calendar month, or a total of 300 Units per calendar year. Should Kiddie fail or refuse to order said 25 Units per month, or 300 Units per calender year, then and in that event, Southland shall have the right to cancel this exclusive franchise agreement to the Territory and grant a similar exclusive right to any other person, firm or corporation. Prior to any termination aforesaid, Southland shall give Kiddie written notice setting forth the default at such time by Kiddie, and Kiddie shall have 30 days after receipt of same within which to cure said default. If Kiddie fails to cure said default within said 30-day period, then Southland may terminate this Agreement as aforesaid. If this Agreement be terminated for any cause whatsoever, all orders placed by Kiddie prior thereto shall be filled by Southland. It is specifically agreed by and between the parties hereto that Kiddie shall not be obligated to place orders for Units as aforesaid, but upon its failure so to do, Southland may terminate this Agreement as herein provided.

"6. This agreement shall continue for a period to and including December 31, 1962, and yearly thereafter unless sooner terminated by default of Kiddie as aforesaid."

The agreement did not specifically provide for the disposition of the $19,950 in the event of termination.

After Kiddie Rides had ordered, received, and paid for the first one hundred units, it placed no further orders. Pursuant to the terms of the contract, Southland terminated the agreement by sending a notice of termination which was accepted by Kiddie Rides. Kiddie Rides then requested a further franchise agreement "and the right to recover its $19,-950 deposit". The request led to an agreement dated May 31, 1962, which agreement provided,

> "Southland hereby grants to Kiddie Rides, Inc., for a period of 18 months a special sale price of $1245.00 per unit for the next 80 units of Western Trails Traveling Pony sold in the States of Texas and/or Arizona.

> "In the event that Southland makes any sales of Western Trails Traveling Pony units, other than to Kiddie Rides, Inc. in the States of Texas or Arizona during said 18 month period, it will remit to Kiddie Rides, Inc. the sum of $250.00 per unit or the difference between its selling price and $1245.00 whichever is the greater. Sales taxes and freight charges are not to be included in the above calculations.

> "It being further understood, that said special sales price and remittance will terminate when Southland has remitted to Kiddie Rides, Inc. the sum of $20,000.00 or the expiration of the period of 18 months, which ever event occurs first."

Kiddie Rides made no sales during the eighteen month period and, following the expiration of the period, sued to recover the entire amount of the deposit. Southland made three sales in the franchised area, and the parties stipulated that $750, $250 per sale, should be credited against the deposit under the second agreement between the parties. As to the balance of the deposit, $19,200, the District Court held that Kiddie Rides was not entitled to recover it, and judgment was entered in favor of Southland.

In its appeal, Kiddie Rides contends, in effect, that it was entitled to recover such amount of the deposit as could not be offset by a showing by Southland, carrying the burden, of damages resulting to it. It is urged that the contention is supported by a California rule applicable in contract cases in which a depositor has not breached a contract but has merely failed to exercise a privilege or right which he has obtained in exchange for the deposit. Our attention is directed to certain California authorities, including Harriman v. Tetik, 56 Cal.2d 805, 17 Cal.Rptr. 134, 336 P.2d 486 (1961), Freedman v. Rector of St. Mathias Parish, 37 Cal.2d 16, 230 P.2d 629, 31 A.L. R.2d 1 (1951), and Gonzalez v. Hirose, 33 Cal.2d 213, 200 P.2d 793 (1948).

The District Court apparently believed the California rule allowing offsetting damages in forfeiture cases to be applicable. This belief is evidenced by the express finding that the burden rested upon the plaintiff Kiddie Rides to prove that the amount of Southland's damage, if any, was less than the amount of the deposit. There being no such proof, it followed, according to the court's Findings and Conclusions, that Southland was entitled to retain the deposit.

The main thrust of the argument of Kiddie Rides is that there was clearly no breach of contract on its part and that the District Court erroneously miscast the burden of proof. It is insisted that if Southland had the right to retain a portion or all of the deposit, it was Southland's burden to establish the offsetting amount.

Our review of the contracts leads us to the conclusion that no issue of damage to Southland was before the court. This being so, the challenged finding that the burden rested upon plaintiff to prove the extent of the defendant's damage, whether the finding was correct or incorrect, was immaterial.[1]

---

1. If the amount of Southland's damage were a proper issue, we read certain California cases as supporting the determination that Kiddie Rides, as plaintiff, should have carried the burden of proof. See Bird v. Kenworthy, 43 Cal.2d 656, 277 P.2d 1 (1954); Baffa v. Johnson, 35 Cal.2d 36, 216 P.2d 13 (1950).

The California rule for which Kiddie Rides contends has been applied when a depositor has obtained absolutely no consideration for his deposit except the right to fix a contract in the future. Usually, the disputes involved in the California cases have arisen when one has made a deposit in exchange for an option to purchase within a specified period, has failed to exercise his option, and has sought the return of the deposit. Harriman v. Tetik, supra; Freedman v. Rector of St. Mathias Parish, supra; Gonzalez v. Hirose, supra. These cases, apparently decided upon an equitable approach that the seller should not enjoy "unjust enrichment", hold that the deposit may be recovered to the extent that the seller has not been damaged by the depositor's failure to exercise the option.

The cases are not in point. Under its agreements, Kiddie Rides acquired more than rights or privileges which it might choose to exercise or disregard at a future time. Under its first contract, it acquired the immediately existing right of exclusive sales agency in a vast territory embracing twenty states. In the second contract, it acquired, for eighteen months, the right to the franchise in two states, plus an additional, favorable concession. It was assured that it would have no competition in selling the Southland unit. These rights cannot be seen as being without substantial value in light of the fact that Kiddie Rides, to obtain them, made a deposit of $19,950. There appears to be no reason why Kiddie Rides, if it could not effectively exercise its franchise rights for its own profit, could not have done as Palomino did and, prior to termination of the first contract, seek to transfer its rights to another. Southland suffered a distinct legal detriment in being precluded by the contracts from permitting others to sell the unit in the territory included in the agreements.[2] Southland was under no obligation, after termination of the first agreement, to grant Kiddie Rides the gratuitous, second opportunity to earn the return of the deposit.

Southland did not enter an affirmative, defensive plea that it was entitled to claim offsetting damage. The suit against it arose from the two contracts. It stood on the provisions of the contracts, as it was entitled to do. The proper interpretation of the provisions is clear. Kiddie Rides made a deposit to obtain certain rights and, from Southland's standpoint, to insure energetic and faithful efforts in the sale and distribution of the product. Kiddie Rides did not assume mandatory obligations, and hence, it did not breach its agreement. It was not obligated to effect any sales whatsoever, but if it chose to attempt to do so, the agreement provided that a certain amount of the deposit would be recovered with each successful sale. Accomplishment of a sale was a condition precedent to the creation of a Southland obligation to restore the specified portion of the deposit. In effect, therefore, the contractual terms evidenced a clear intent that the deposit should be retained as consideration for benefits conferred by Southland unless Kiddie Rides should, within the specified period recover it, or a portion of it, in the only manner by which it was agreed that it might do so.

It is essential to society's commercial welfare that there be no undermining of the desirable stability of contracts. When their terms are reasonably explicit and plain, as we believe those before us to be, the courts should enforce them. See Construction Mach. Co. v. Willard & Rodman, Inc., 208 Cal.App.2d 31, 38, 25 Cal.Rptr. 13 (1962); Harris v. Spinali Auto Sales, Inc., 202 Cal.App. 2d 215, 20 Cal.Rptr. 586 (1962). "It is, of course, * * * desirable that competent parties be protected in their rights to make and enforce agreements between themselves." Northwest Airlines, Inc. v. Alaska Airlines, Inc., 351 F.2d 253, 256 (9th Cir.1965).

Affirmed.

2. The evidence indicates that Southland incurred costs of about $265,000 so that it might produce the units expected to be sold by Kiddie Rides.